[Civ. No. 67295. Second Dist., Div. Seven. Nov. 8, 1983.]

WINSTON ENGLISH, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE LOS ANGELES
CITY EMPLOYEES' RETIREMENT SYSTEM,
Defendant and Respondent.

**COUNSEL**

Lemaire, Faunce & Katznelson, Edward L. Faunce and Robert K. Scott for Plaintiff and Appellant.

Ira Reiner, City Attorney, and Siegfried O. Hillmer, Assistant City Attorney, for Defendant and Respondent.

**OPINION**

**SCHAUER, P. J.**—This case presents two issues raised by an employer's refusal to grant a disability pension to an employee. The first issue is one of estoppel, specifically, whether the employer is estopped to deny the employee's disability after the employer has agreed to a rehabilitation plan for the employee pursuant to Labor Code section 139.5. The second issue involves the trial court's failure to make findings with regard to conflicting administrative decisions, during that court's review of one of those decisions under Code of Civil Procedure section 1094.5.

We hold that the proposed estoppel is not sustainable, but that the case must be remanded to the trial court for findings as to the alleged administrative conflict.

*Facts*

Appellant, Winston English, worked as a maintenance laborer for the City of Los Angeles (the City), with its Department of Recreation and Parks (the Department), from 1973 until August 1979. In June 1975, while on duty, appellant injured his back while lifting a trash container that was heavier than expected. He received medical treatment on the day of the injury and

continuously thereafter, missing work intermittently for six months due to this injury. In June 1976 appellant reinjured his back while on the job, moving a bleacher. He missed two weeks of work due to this injury and received additional medical treatment. Appellant injured his back a third time in September 1976 when he again moved a bleacher while cleaning a tennis court. He underwent physical therapy after this injury and subsequently returned to work. Appellant claims that the pain in his back worsened in 1978. In February 1979, he was placed on light duty doing office work. He ceased work for the City on August 14, 1979, apparently because Comprehensive Employment and Training Act funding for his light duty assignment ceased.

On January 7, 1980, appellant applied for a disability pension pursuant to section 510 of the Charter of the City of Los Angeles (the Charter). In accordance with section 510 of the Charter, petitioner was examined by three doctors selected by respondent, the Board of Administration of the Los Angeles City Employees' Retirement System (the Board). The first such doctor, James Daniels, stated that the only medical limitation which could affect appellant's ability to perform his duties was his back ailment. Daniels declined to state whether this back ailment actually precluded appellant from performing his duties, deferring this judgment to an orthopedist or neurologist. The second doctor, Philip Kanter, stated that appellant's back ailment would not prevent him from performing his duties. The third doctor, Melvin Stoltz, felt that petitioner could not perform heavy lifting and thus could not perform all the duties listed in the relevant job description.

The Board held a hearing on appellant's claim on August 26, 1980, and voted unanimously to deny his petition for a disability pension.

After this hearing, appellant returned to the Department requesting reinstatement in his job. Appellant claims that the City denied this request and that this denial was based on his disability. On January 27, 1981, the Board held a hearing to consider appellant's request for a rehearing as to his disability pension. The request was denied.

In the meantime, appellant had applied for vocational rehabilitation benefits under Labor Code section 139.5. The City agreed to such rehabilitation, and the vocational rehabilitation bureau issued an order approving a rehabilitation plan which contemplated retraining appellant as a dental assistant. He attempted the rehabilitation program from February to September 1980, when he terminated rehabilitation, claiming that prolonged sitting with his neck bent down exacerbated his back condition.

Pursuant to Code of Civil Procedure section 1094.5, appellant petitioned for review in the superior court of respondent's denial of his pension. The trial court denied appellant's petition.

Appellant appeals, claiming (1) respondent is collaterally estopped from denying his disability, because it stipulated to this disability before the vocational rehabilitation bureau, (2) there was no substantial evidence supporting the trial court's denial of his petition under section 1094.5, and (3) the trial court abused its discretion in not admitting new evidence, obtained by appellant after his hearing before the Board.

*Respondent is not collaterally estopped by its agreement to refer appellant to a rehabilitation program.*

■ Appellant argues that respondent is collaterally estopped from denying his disability. This estoppel, appellant contends, arises from the fact that respondent agreed to a rehabilitation plan for appellant under Labor Code section 139.5. A worker is eligible for rehabilitation under section 139.5 only if he or she suffers from injuries which "preclude, or are likely to preclude the employee from engaging in his or her usual and customary occupation or the position in which he or she was engaged at the time of the injury." (Cal. Admin. Code, tit. 8, § 10003, subd. (c)(1).) Accordingly, in admitting that appellant was eligible for rehabilitation, respondent admitted that he suffered from a disability which met the quoted standard. Since this admission was crystalized into an order of rehabilitation by the vocational rehabilitation bureau, appellant asserts that a final judgment on the merits has been entered establishing his disability. This judgment purportedly estops respondent from "relitigating" the matter of disability.

■ The doctrine of collateral estoppel acts to bar relitigation of an issue if the following three criteria have been met: "(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; . . . (2) the previous [proceeding] resulted in a final judgment on the merits; and . . . (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].)

■ In the case at bench, the first requirement, identity of issue, is not present. Specifically, the showing of disability required by the Charter is appreciably different from the showing required prior to qualification for rehabilitation under Labor Code section 139.5. The principle of collateral estoppel is therefore inapplicable.

The Charter provides the following requirements for a disability pension: "Any member who has five (5) or more years of continuous service and who has become physically or mentally incapacitated and who is incapable, as a result thereof, of performing his duties, may be retired upon written

application of such member . . . ." In contrast, the administrative director's rules, promulgated pursuant to Labor Code section 139.5, subdivision (b), provide the following definition of a "Qualified Injured Worker," eligible for rehabilitation:

"(c) 'Qualified Injured Worker' means an employee:

"(1) The effects of whose injury, whether or not combined with the effects of a prior injury or disability, if any, permanently preclude, or are likely to preclude the employee from engaging in his or her usual and customary occupation or the position in which he or she was engaged at the time of injury; and

"(2) Who can reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services." (Cal. Admin. Code, tit. 8, § 10003, subd. (c).)

The Charter thus requires a concrete showing that the employee "*is* incapable" of performing his duties. The rehabilitation regulations, in contrast, require only that the employee show that his injury is "*likely*" to preclude his return to work. This latter standard is much more lenient than the former; an admission that an employee's disability meets the rehabilitation standard is thus not legally equivalent to an admission that the disability meets the City's pension standard.

This difference between the two standards is magnified when the language of these two provisions is viewed in the context of the medical reports which invariably serve as evidence in these cases. Medical reports holding that an injury is "likely" to preclude a return to work are, by their nature, much easier to procure than reports which flatly state that an injury does prevent an employee from returning to the job. The issue determined for the purpose of the vocational rehabilitation bureau is thus not "identical" to the issue the Board was required to decide in ruling on appellant's petition for disability retirement. Under the standard set forth in *People* v. *Taylor, supra,* 12 Cal.3d at page 691, the collateral estoppel doctrine is inapplicable.

Policy considerations also support this conclusion. If collateral estoppel were applicable on these facts, then any approval of a rehabilitation plan would, by collateral estoppel, also necessitate the award of a disability pension. To avoid this result, the City would be encouraged to contest rehabilitation proposals, rather than voluntarily agreeing to these proposals, as it did in the case at bench. This chilling effect on rehabilitation would frustrate the legislative purpose of Labor Code section 139.5, which was enacted in order to promote the vocational rehabilitation of injured workers. (*Moyer*

v. *Workers' Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224].)

*Appellant's allegation of conflicting administrative decisions requires reconsideration of his petition.*

■　When a vested fundamental right is at stake, the trial court is required to use its independent judgment in reviewing an administrative decision. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) The disability pension at issue here is such a vested right. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].) On appeal, the trial court's findings, not those of the agency, are reviewed. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) The questions on appellate review are: (1) whether the trial court exercised its independent judgment in reviewing the decision; and, (2) if it did, whether there is substantial evidence to support the trial court's finding.

■　In the case at bench, the trial court denied appellant's petition, giving the following reason: "I will deny the petition for the reason that while I accept the finding that he can't lift a hundred pounds, that that is not a substantial part of his duties. That would be my ground for decision." The record before the trial court contained substantial evidence, in the medical reports and job descriptions, to support the above conclusion. Furthermore, the court used its independent discretion in examining this evidence.

A fatal flaw, however, exists in that the trial court did not consider or find on a critical issue raised in this case: appellant alleges that the City denied his request to return to work, basing this decision on his disability. In the face of this allegation and the uncontroverted evidence in support thereof, there is not substantial evidence, as a matter of law, to support respondent's administrative decision. Accordingly, the trial court's judgment must be reversed and the case remanded for further consideration of this allegation.

■　"While the city has many departments and subdepartments, . . . it is a single entity in its contractual obligation." (*Roccaforte* v. *City of San Diego* (1979) 89 Cal.App.3d 877, 888 [152 Cal.Rptr. 558].)　■　Here the Board, which found the appellant able-bodied, and the Department, which allegedly found him too disabled to return to work, are parts of a single entity, the City of Los Angeles. Their decisions must therefore be consistent.

Conflicting administrative decisions, such as the ones appellant alleges here, were the subject of *Roccaforte* v. *City of San Diego, supra,* 89

Cal.App.3d 877. There, a policeman, Roccaforte, who had been injured in the line of duty, was informed that his "injury leave benefits [were] being terminated because [his] condition had become permanent and stationary." He thereupon applied for a disability pension based on this permanent injury. The city's retirement board denied this application, claiming Roccaforte was not incapacitated. In the meantime, Roccaforte had requested to return to his job at the police department. The department formally refused this request, stating that Roccaforte was incapacitated and that he therefore did not meet the medical requirements for the position of a police officer. Faced with these contradictory findings, the appellate court reversed the denial of Roccaforte's petition for a disability pension. The court held:

"The real party in interest in these proceedings is the City of San Diego. It is bound by contractual agreements with Roccaforte. It is bound by the police department's determination that Roccaforte was not employable by reason of his injuries. . . .

"The employer branch of the City, the police department, made this critical decision. Roccaforte was unfit for police duties due to a job related injury. This prime determination compelled payment of injury leave pay; or if Roccaforte's injuries were permanent and stationary—and he was still not acceptable for work—an appropriate award by the Retirement Board was in order. The trial court examined the three administrative decisions as separate, unrelated to the City's overall obligation to Roccaforte. This approach permitted the City to avoid its duty to compensate Roccaforte through one of its appropriate agencies for the injuries he received in the course of his police work. It was and is the trial court's duty, after examination of the evidence, contract requirement and applicable law, to exercise its independent judgment, to cut that Gordian knot of conflicting administrative decisions to the end that Roccaforte be awarded that which his employment contract and the medical facts demand." (*Roccaforte* v. *City of San Diego, supra,* at pp. 887-888.)

In the case at bench we are faced with conflicting administrative decisions similar to those present in *Roccaforte.* Here, the Board has found appellant capable of performing his duties, while the Department seems to have found him incapable of returning to these very duties.

The trial court was presented with evidence that this administrative conflict existed. This evidence consisted of the following testimony of Pat Gonzalez, an employee coordinator for the City, who testified at the January 27, 1981, hearing held *after* the Board had officially declared appellant capable of returning to his duties:

"Q. When he came to your office and spoke to you about the denial of his pension, could you tell us what transpired in the conversation?

"A. He came into the office indicating that he wanted to return to work. I stated to him at that point that we would have to look into it a [bit] further since he had restrictions that precluded him from performing the duties of a maintenance laborer.

"Q. When you told him that he had restrictions on him that precluded him from returning to work as a maintenance laborer, upon what basis did you tell him that? What information did you rely on?

"A. The doctor's report that we have from the Worker's Comp doctor."

Appellant himself confirmed this denial of his request to return to work with the following testimony at the January 27 hearing:

"Q. After the denial of your original application for disability retirement, did you return to the personnel department and ask that you be placed back to work?

"A. Yes, I did.

"Q. What was told to you at that time?

"A. That I could not do my job because of my restrictions.

"Q. Who informed you of this?

"A. Pat Gonzalez."

Respondent presented no evidence to contradict the assertion that it refused to reinstate appellant. The evidence presented to the trial court was thus completely one-sided. Furthermore, while the offer of an appropriate light duty position will justify the denial or revocation of a disability pension (*Winslow* v. *City of Pasadena* (1983) 34 Cal.3d 66 [192 Cal.Rptr. 629, 665 P.2d 1]), no evidence was presented that appellant was ever offered such a permanent position.

The trial court made no express findings on the administrative conflict or on the issues underlying it. Nor did it remand the case to respondent, under *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 600 [297 P.2d 967], for a rehearing clarifying uncertainties in appellant's allegation of such a conflict. The record, therefore, shows no substantial evidence which would support

implied findings by the trial court that appellant was offered a permanent light duty job, that he was not denied a position because of his back ailment, or that the alleged administrative conflict did not exist. The case is therefore reversed and remanded for consideration of these issues of alleged administrative conflict.

Finally, appellant argues that the trial court erred in not considering evidence which became available after the hearing before the Board. Since this evidence may be considered on remand, we need not reach this question here.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Thompson, J., and Johnson, J., concurred.