[No. F007298. Fifth Dist., June 19, 1987.]

FRED SWEHLA, Plaintiff and Appellant, v.
TEACHERS' RETIREMENT BOARD, Defendant and Respondent.

**COUNSEL**

Chain, Younger, Lemucchi, Noriega, Cohn, Stiles & Rodriguez and David V. Stiles for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**PETTITT, J.***—On September 23, 1983, appellant Fred Swehla filed an application with the State Teachers' Retirement System for a disability allowance citing a psychiatric impairment. This application was denied on September 21, 1984.

Appellant appealed this decision. After a hearing before an administrative law judge, an order denying the application was filed on August 30, 1985, finding cause for the denial of the application. This decision was adopted by the Teachers' Retirement Board on September 20, 1985.

On December 20, 1985, appellant filed a petition for a writ of mandamus in the Kern County Superior Court seeking a reversal of the denial. After undertaking an independent review of the record, the trial court denied the writ of mandamus. Formal judgment of this decision was filed on May 13, 1986. A timely notice of appeal was filed on June 2, 1986.

### FACTS

Appellant was a junior high school teacher until 1975. At that time, he requested a leave of absence citing stress. Appellant has not resumed teaching, and in 1983 sought a disability allowance.

In his testimony at the administrative hearing, appellant stated that in 1972 he and his wife learned their son had Hodgkin's Disease. Over time, the stress of dealing with the disease, its treatment, and the pressures of his own job caused appellant to ask for a leave of absence in 1975. At the same time, appellant's marriage was dissolving. Appellant felt he was unable to deal with his duties in the classroom and could no longer respond adequately to the needs of his students.

Appellant believes it impossible to return to teaching. He sees a psychiatrist once every two weeks and considers himself disabled from resuming any meaningful teaching position.

Dr. Gerald Nemeth, a psychiatrist who examined appellant for respondent, testified as to his findings. Dr. Nemeth noted appellant had experi-

---

* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

enced no problems with the stresses of teaching for 20 years. In 1972, however, after learning of his son's illness, problems began to arise. Appellant began to drink heavily and often clashed with his wife. Soon, the marriage dissolved. Since 1975 appellant has done nothing. In Dr. Nemeth's opinion, appellant has settled into a nonstressful life which he does not want disturbed. Appellant takes care of himself and his home, and regularly visits his sister. Beyond that, his social and professional lives have ceased. He has made no serious attempt to find new employment of any kind. Appellant now engages in only moderate use of alcohol and tobacco.

It was Dr. Nemeth's opinion that appellant's abilities to think, reason and concentrate were unimpaired. Dr. Nemeth did not believe appellant was less capable of teaching now as a result of the problems he experienced in 1975. In fact, even though Dr. Nemeth concluded appellant had a passive-aggressive personality disorder, he did not feel this disorder impaired appellant's ability to teach.

On cross-examination, Dr. Nemeth admitted appellant's disorder was lifelong and that he probably suffered from it before the 1972-1975 period. However, Dr. Nemeth noted that passive-aggressive personality disorders do not preclude an individual from functioning in a job or relationship. Dr. Nemeth believed appellant had stabilized at a nonacute level, and although his disorder would be ongoing, it had been years since he was incapacitated significantly. Instead, appellant's current problems are personality and motivationally related.

Dr. Nemeth went on to explain that while he would not recommend appellant start off with a teaching assignment, he could move into it gradually. Dr. Nemeth saw no indication, in the clinical sense, that appellant could not again cope with the stresses of teaching. Appellant's problems are motivational—he does not want to continue teaching, rather than lacking the ability to continue. Because appellant's lack of motivation most likely will lead to failure upon a return to teaching, Dr. Nemeth suggested appellant should learn a new job. However, it was Dr. Nemeth's opinion that if motivated, appellant could return to teaching.

A report from appellant's personal psychiatrist was admitted into evidence at the administrative hearing. In the report, Dr. Walter Grant found appellant unemployable and permanently disabled. Dr. Grant describes appellant as a person who is phobic about his job and anxious. Dr. Grant also notes appellant's abilities to remember and concentrate are noticeably impaired. In his opinion, appellant will remain as he is now and is an unlikely candidate for rehabilitation.

## Does Substantial Evidence Support the Denial of Appellant's Application for a Disability Allowance?

Appellant believes the evidence was clear that he could no longer work, and therefore, it was error for the trial court to deny his writ of mandate.

■ When an administrative decision affects a legitimately acquired or "vested" right, and that right is of a fundamental nature in terms of its economic effect on the individual, a full and independent judicial review of the decision must be undertaken. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].) Independent review requires the trial court to make its own determination based on the evidence presented to the board. When independent review is undertaken at the trial level, the function of the appellate court is to decide whether credible and competent evidence supports the court's judgment. (*Dresser* v. *Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 506, 510-511 [181 Cal.Rptr. 797]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].) All conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged to uphold the trial court's conclusion. (*Ibid.*)

Here it appears there is more than a sufficient basis to affirm the trial court's conclusions. Specifically, the trial court found: "5. Petitioner's personality disorder does not prevent him from performing his usual duties or duties of a comparable level for which he is qualified, but rather Petitioner's personality disorder manifests itself in his refusal to do anything that he doesn't want to do or have to do.

"6. It is manifest that Petitioner's inability to perform his teaching duties in 1975 resulted not from the inherent stresses of teaching, but rather from the extreme stress of dealing with the terminal illness suffered by Petitioner's adopted son followed by the breakdown of Petitioner's marriage. That extreme stress is no longer present, and, as concluded by Gerald M. Nemeth, M.D., the psychiatrist who examined Petitioner on June 8, 1984, Petitioner is as capable as he ever was of performing his teaching duties. It further appears that Petitioner, by virtue of his Master's Degree in School Administration, is qualified, or could easily become qualified, for duties of a comparable level, either in or out of the field of education.

"7. Accordingly, it is this Court's independent judgment on the evidence taken at the administrative hearing on August 28, 1985, that the Petition for Writ of Mandamus should be denied."

Under Education Code section 22122,[1] an individual is considered "disabled" if he or she suffers from "any medically determinable physical or mental impairment which is permanent or which can be expected to last continuously for at least 12 months, measured from the onset of the disability, but no earlier than the day following the last day of on the job performance which prevents a member from performing the member's usual duties for the member's employer or the duties of a comparable level for which the member is qualified within a reasonable period of time by education, training, or experience...." Up to this point, only one court has attempted to define this language. In *Wolfman* v. *Board of Trustees* (1983) 148 Cal.App.3d 787 [196 Cal.Rptr 395], the court was presented with a case involving an elementary school teacher who suffered from asthma and chronic bronchitis. Because of her constant contact with children, Wolfman's severe bronchial asthma constantly was aggravated. (*Id.* at p. 791.) As a result of this situation, Wolfman was prescribed numerous antibiotics and steroids which carried the potential for severe side effects. Wolfman stopped teaching and her condition improved. However, it was her doctor's opinion that, if she returned to the classroom, the same vicious cycle would begin, resulting in the need for even more dangerous treatment. (*Ibid.*)

After reviewing the interpretation of similar statutes under the Government Code, the court concluded that the facts supported a finding that Wolfman was disabled under section 22122. "Unlike [other recent cases], Wolfman *is* disabled from her *usual* and *customary* duties. Proximity to small children and their rampant infectious agents is not a remote occurrence nor an activity in which she indulges outside the classroom. There is no elementary teaching position to which she could be reassigned for limited duty that would not place her in the same contagious environment. Nor do we find her disability speculative .... During her final years of employment she consistently reached a medically determinable stage of severity. It was not merely a prospective probability, but a medical certainty." (*Id.* at p. 791.)

Because the *Wolfman* court found it impossible for Wolfman to return to work without endangering her health, it never discussed whether "disability" as defined under the Education Code offers a less stringent standard than that provided for public employees in general under the Government Code. Specifically, the Government Code requires that an "*incapacity*" to perform duties be shown before retirement or disability benefits can be awarded. (Gov. Code, §§ 21022, 31724.) For example, Government Code section 21022 has been interpreted to require a substantial inability of the applicant to perform his or her usual duties. (*Mansperger* v. *Public Employ-*

---

[1] All statutory references are to the Education Code unless otherwise indicated.

*ees' Retirement System* (1970) 6 Cal.App.3d 873, 876 [86 Cal.Rptr. 450].) Under section 22122, a teacher can be classified as *"disabled"* if he or she is found to suffer from a physical or mental *impairment.*

 When construing statutes, the court must first try to ascertain the intent of the Legislature in order to further the purpose of the law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) However, a court also must try to interpret a statute according to the usual and ordinary meaning of the language used in framing it. (*Ibid.*) Whenever possible, a court should place significance on each word, phrase, and sentence used in an act in pursuance of the legislative purpose. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) The words in the statute must be viewed in their proper context in light of the nature and obvious purpose of the statute where they appear. (*Ibid.*)

 The language of section 22122 appears somewhat unambiguous as to the type of physical or mental impairment that qualifies as a disability. The impairment must be permanent or expected to last for a continuous 12-month period. The impairment must be the type that prevents the individual from performing his or her usual duties, or "the duties of a comparable level," within a reasonable period of time.[2]

Although it may be easier to establish that an injury is an "impairment" rather than an "incapacity," when viewing the term within the context of the statute, the two standards do not seem to be so far apart. Again, a teacher must establish that an impairment *prevents* him or her from performing the duties required of a teacher. Seen in this context, the term "impairment" seems no different from "incapacity," as that term is defined under the Government Code. Any other interpretation would require this court to consider what levels of injuries constitute an impairment and how those levels of injury affect a teacher's ability to teach. This court is neither the proper forum to make this determination, nor prepared to make such an evaluation.

 It does not appear that either the administrative law judge or the trial court considered anything other than whether appellant had a mental impairment which prevented him from performing the usual duties of a teacher. Both the administrative law judge and the trial judge found appellant capable of performing his teaching duties. Both concluded appellant

---

[2] Section 22122 takes into account any additional education, training, or experience that may be necessary before returning to teaching.

had a personality disorder, but that his failure to return to teaching was based on his own lack of motivation and refusal to do so.

Substantial evidence supports these conclusions. Dr. Nemeth testified he believed appellant was no less capable of teaching than he was before his problems and departure in 1975. According to Dr. Nemeth, appellant's abilities to think, reason and concentrate are unimpaired. In Dr. Nemeth's opinion, appellant's personality disorder does not prevent him from performing his job as a teacher. While Dr. Nemeth recommends appellant be phased into a teaching position slowly, given the circumstances of his case,[3] he sees nothing "that would prevent him [from] teaching as reasonably well as he did before."

The above evidence supports a conclusion appellant is not physically or mentally impaired within the meaning of section 22122. A valid basis to affirm the denial of the writ of mandamus therefore exists.

The judgment is affirmed.

Franson, Acting P. J., and Woolpert, J., concurred.

---

[3] This presumably refers to appellant's motivational problems and his absence from the classroom for more than 10 years.