[No. B049790. Second Dist., Div. Five. July 3, 1991.]

SHARON ABSHEAR, Plaintiff and Respondent, v.
TEACHERS' RETIREMENT BOARD OF THE STATE OF CALIFORNIA
et al., Defendants and Appellants.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Henry G. Ullerich, N. Eugene Hill and Xavier Becerra, Deputy Attorneys General, for Defendants and Appellants.

Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Respondent.

## OPINION

**BOREN, J.**—Appellant Teachers' Retirement Board of the State of California (the Board) denied respondent Sharon Abshear's application for a disability allowance, even though an injury suffered by Abshear undisputedly prevents her from performing her duties as a physical education teacher. The Board justified its denial on the grounds that Abshear could become qualified as a classroom teacher within a reasonable period of time. Applying its independent judgment to the record produced at the administrative hearing, the trial court rejected the Board's decision, and issued a writ of mandate commanding the Board to grant Abshear's application for disability. We affirm.

### FACTS

Beginning in 1962, Sharon Abshear taught physical education at the East Whittier City School District. Her duties required her to supervise and demonstrate physical activities to her students, which meant that she had to

stand or walk most of the time. She has never taught any course other than physical education during her teaching career.

In the fall of 1984, Abshear fell and severely twisted her right knee while performing her duties as a physical education teacher. She was unable to work for eight weeks. After she returned to work, the condition of her knee deteriorated. She underwent arthroscopic surgery in October of 1985, but this did not alleviate the pain or allow her full use of her leg. All the doctors who examined Abshear concluded that her condition is permanent and stationary, and that she is legitimately disabled from her normal activities as a physical education teacher. The Board does not dispute that Abshear's impairment prevents her from working as a physical education teacher.

In light of the Board's concession that Abshear could not continue as a physical education teacher, the question remained whether she could qualify as a classroom teacher. The facts which came to light in regard to this issue were as follows: Abshear received a bachelor's degree in physical education in 1958. During her undergraduate studies from 1954 to 1958, she completed 20 units in world history. She attended Whittier College between 1966 and 1970, where she took courses in comparative political systems and international relations, anthropology and sociology. She completed 10 units in each of these areas of study, and ultimately received a master's degree in teaching. Abshear has no recollection of what subjects were covered in any of these courses.

After her knee surgery, Abshear requested that the East Whittier School District modify her activities so that she could continue to work in physical education. The school district denied this request. It also concluded that Abshear's credential in physical education alone precluded her from teaching any other subject.

In October of 1986, Abshear filed an application with the Board for a disability allowance. Jonathan Stubbs, Rehabilitation Program Manager for the California Teachers' Retirement System, reviewed Abshear's application for a disability allowance and concluded that she had sufficient educational units to obtain a teaching credential in subjects other than physical education. Specifically, he believed she could receive a credential in sociology, world history, comparative political systems and adult education, though he conceded she had no teaching experience in these areas. Earl Baker, of the Commission on Teacher Credentialing, agreed with Stubbs's conclusion. Baker did not consider it relevant that Abshear's educational units were obtained 20 to 30 years earlier. Baker conceded that merely giving Abshear

a credential in an area does not oblige a school district to hire her; indeed, that the district would be required to give priority to qualified applicants.

### PROCEEDINGS

The Board denied Abshear's application in April of 1988. The following month, Abshear filed a notice of defense, and the matter was set for hearing before an administrative law judge. In May of 1989, the administrative law judge issued a proposed decision denying Abshear's application. The decision concludes that Abshear is disabled from working as a physical education teacher; however, it finds that she is able to perform as a classroom teacher through training, though not by experience. The Board adopted this decision in July of 1989.

On August 1, 1989, Abshear filed a petition for a writ of mandate in the superior court. The Board answered and opposed the petition. In February of 1990, the trial court issued its order granting Abshear's petition. The court agreed that Abshear is disabled from working as a physical education teacher. However, it found that she would not be qualified within a reasonable period of time to teach any classroom subject. The court then entered judgment for Abshear and awarded her attorney's fees and costs.

The Board appeals.[1]

### DISCUSSION

1.   *Standard Of Review*

■    If an administrative decision is made by the Teachers' Retirement Board which affects a person's fundamental vested right to a disability allowance, the trial court is required to independently review the evidence presented to the Board when a petition for a writ of mandate is brought by the applicant for disability benefits. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29]; *Swehla* v. *Teachers' Retirement Bd.* (1987) 192 Cal.App.3d 1088, 1092 [237 Cal.Rptr. 789].) The trial court correctly applied the independent judgment rule in this case.

Under the independent judgment rule, the trial court must weigh the evidence and make its own determination as to the correctness of the

---

[1]Bill Rogers, in his capacity as deputy chief executive officer of the State Teachers' Retirement System, also appeals. For convenience, both Rogers and the Board will be referred to as the Board.

administrative findings. ■ On appeal, the question is whether the trial court's findings are supported by substantial evidence. (*Petrucci* v. *Board of Medical Examiners* (1975) 45 Cal.App.3d 83, 87 [117 Cal.Rptr. 735].) Conflicts in the evidence must be resolved in favor of the respondent, and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court. (*Anderson* v. *Latimer* (1985) 166 Cal.App.3d 667, 670 [212 Cal.Rptr. 544].)

*2. Substantial Evidence Supports the Trial Court's Finding That Abshear Is Not Qualified for Classroom Teaching*

■ The Education Code provides an allowance for teachers who are found to be "disabled." A disability exists if the teacher (1) has a permanent physical impairment, and (2) is prevented from performing his or her usual duties or the duties of a comparable level for which the teacher is qualified within a reasonable period of time by education, training or experience. (Ed. Code, § 22122.)[2]

■ In this case, it is undisputed that Abshear suffers a permanent physical impairment which prevents her from performing her usual duties as a physical education teacher at the East Whittier School District. Thus, the only issue to be resolved is whether Abshear is capable of performing other teaching duties *for which she is qualified* within a reasonable period of time by education, training or experience.

The Board takes the position that because Abshear is authorized to obtain, for a fee, a teaching credential in world history, comparative political systems and international relations, anthropology and sociology, based on courses she took 20 to 30 years ago, this makes her qualified to teach these subjects. (§ 44256.)[3] The trial court rejected this position, concluding that even if Abshear is "authorized" to receive a credential under section 44256, this certainly does not make her "qualified" to teach any of these subjects.

Our reading of the Education Code leads us to believe that the trial court is absolutely correct.

---

[2]Section 22122 reads: " 'Disability' or 'disabled' means any medically determinable physical or mental impairment which is permanent or which can be expected to last continuously for at least 12 months, measured from the onset of the disability, but no earlier than the day following the last day of on the job performance which prevents a member from performing the member's usual duties for the member's employer or the duties of a comparable level for which the member is qualified within a reasonable period of time by education, training, or experience. Any impairment from a willful self-inflicted injury shall not constitute a disability."

All future statutory references are to the Education Code unless otherwise indicated.

[3]Section 44256 lists the minimum number of semester hours of coursework needed to authorize the issuance of a teaching credential in a subject.

In 1988, the Legislature announced its statement of intent regarding the credentialing of teachers: "The Legislature finds and declares all of the following:

"(a) The public has a right to hold its schools accountable, and to expect that any individual licensed to teach young people has met rigorous professional standards in subject matter knowledge and teaching performance.

"(b) Teaching standards are based on state law and regulations, local district policies and practice, and professional norms.

"(c) *The current state system does not ensure sufficient rigor.*

"(d) When schools cannot attract qualified teachers at a given wage, teaching standards are lowered.

"(e) *The current system of granting a teaching credential is based primarily on the completion of required coursework. The Legislature finds that this system should be revised* to make thorough assessments of individual candidates the primary basis for granting a teaching credential and for entry into the profession, as is the practice in other professions, including medicine, law, nursing, dentistry, and accounting. *It is the intent of the Legislature that assessments emphasize skill and knowledge attainment, rather than course credits,* and that institutions of higher education be given broad responsibility to determine the nature of coursework and other program elements in a teacher preparation program.

"(f) The Legislature also finds that the agency that develops standards and examinations must take responsibility for the quality of the teachers that it credentials and that it must be directly accountable to the public and to elected officials for its methods and decisions." (Stats. 1988, ch. 1355, § 1, italics added. This statement appears in the Note to section 44200 in the annotated codes, pertaining to the "Teacher Credentialing Law of 1988" or "The Bergeson Act.")

In addition, section 44225, subdivision (d) requires that the commission on teacher credentialing, for which witness Baker works, "[e]stablish standards for the issuance and renewal of credentials, certificates, and permits. In setting standards, the commission shall seek to ensure, through its credentialing of teachers, that public school teachers satisfy all of the following criteria: [¶] (1) Are academically talented. [¶] (2) *Are knowledgeable of the subjects to be taught in the classroom.* [¶] (3) Are creative and energetic. [¶] (4) Have the human skills to motivate and inspire students to achieve their goals. . . ." (Italics added.)

If this case is any example, the officials entrusted with safeguarding the quality of this state's public schools have sidestepped the legislative mandate. From the testimony of Mr. Stubbs and Mr. Baker, we gather that state credentialing and rehabilitation officials focus on one criterion alone in determining whether to issue a teaching credential, namely, the number of educational course units completed. This is *precisely* what the Legislature commanded these officials not to do in its statement of legislative intent. The express purpose of the Teacher Credentialing Law of 1988 was to improve the quality of teachers by making credentialing more stringent, requiring a "thorough assessment" of an individual's teaching skills and knowledge of a subject.

In the case at bar, there is not a scintilla of evidence that Abshear possesses any classroom teaching skills or transmittable knowledge of comparative political systems and international relations, sociology, world history or anthropology. Quite the contrary. The evidence only shows that Abshear has never developed any classroom teaching skills because her work as a physical education teacher did not require it, and that she has no recollection, unsurprisingly, of the subject matter she learned 20 and 30 years ago.

Applying the legislative standards stated in the Teacher Credentialing Law of 1988, we conclude that there is substantial evidence to support the trial court's determination that Abshear is not currently qualified by reason of education, training or experience to teach any subject other than physical education, nor will she be so qualified within a reasonable period of time.

### 3. *Rehabilitation*

The trial court, in its order, found that the Board may either grant disability benefits to Abshear, or it may require her to participate in a rehabilitation program to enable her to perform teaching duties.[4] The Board argues that this portion of the order was incorrect because Abshear was not disabled within the meaning of section 22122. As discussed in part 2 of this opinion, we conclude that Abshear was disabled within the meaning of section 22122. Accordingly, the trial court properly gave the Board the

---

[4]Section 23905 provides: "Any member qualifying for disability allowance pursuant to Section 23902 with a disabling impairment amenable to treatment that could be expected to restore ability to perform the member's usual duties or those of a comparable level shall participate in a treatment program prescribed by the member's treatment sources. Willful failure to initiate and continue participation in the program shall cause the disability allowance to be terminated. In determining whether a member has good cause for failure to follow such treatment, the board shall take into account whether such treatment would abridge the member's right to the free exercise of religion."

option of choosing to make disability payments, or attempting to rehabilitate Abshear.

### 4. *Award Of Attorney's Fees*

A litigant who successfully challenges the determination of an administrative agency may recoup his or her attorney's fees and costs if the agency's action was arbitrary and capricious. (Gov. Code, § 800.)[5] The trial court awarded Abshear her attorney's fees in the amount of $1,500, and costs of $830.40. Because Abshear is the prevailing party in this lawsuit, and she is obliged to pay her attorney's fees, the only issue is whether the Board's action was arbitrary and capricious. This determination is essentially one of fact, within the sound discretion of the trial court. (*Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 78 [200 Cal.Rptr. 322].)

An agency's action is arbitrary and capricious if it encompasses conduct which is not supported by a fair or substantial reason, shows a stubborn insistence on following unauthorized conduct, or amounts to a bad faith legal dispute. (*Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [227 Cal.Rptr. 667, 720 P.2d 15].)

At the time the administrative law judge rendered her decision, and the Board adopted that decision as its own, the legislative standards requiring that credentials be given to individuals who could demonstrate classroom skills and knowledgeability in a subject were already in effect. As discussed in part 2, Abshear had neither classroom skills nor knowledge of the areas for which she could purportedly receive a credential. The Board knew, or should have known, that Abshear was not competent to teach world history, anthropology, sociology or comparative politics without first having substantial rehabilitation. Rather than heeding the legislative mandate to make a thorough assessment of each individual instead of focusing on the individual's coursework, the Board conveniently focused on courses taken by Abshear 20 and 30 years ago to deny her application for disability, while

[5]Government Code section 800 reads: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), where he or she is personally obligated to pay the fees, from the public entity, in addition to any other relief granted or other costs awarded. . . ."

conceding, through Mr. Baker, that no school district would be obligated to hire someone as unqualified as Abshear.

Under the circumstances, the Board's decision was not supported by a fair and substantial reason, and as such was arbitrary and capricious. The trial court was justified in awarding attorney's fees and costs to Abshear, and a like award is justified for this appeal.

### DISPOSITION

The judgment is affirmed. Respondent is entitled to recover her attorney's fees and costs on appeal.

Turner, P. J., and Ashby, J., concurred.