[No. E038572. Fourth Dist., Div. Two. May 16, 2006.]

MICHELE LAZAN, Plaintiff and Respondent, v.
COUNTY OF RIVERSIDE et al., Defendants and Appellants.

454

COUNSEL

Liebert Cassidy Whitmore, Steven M. Berliner; and Robert M. Pepper, Jr., County Counsel, for Defendants and Appellants.

Faunce, Singer & Oatman, Edward L. Faunce and Larry J. Roberts for Plaintiff and Respondent.

OPINION

GAUT, J.—

## 1. Introduction

After plaintiff Michele Lazan was injured while on duty as a deputy sheriff for the County of Riverside (the County), she unsuccessfully filed an application for disability retirement. She later requested that the County file an application for disability retirement on her behalf under Government Code section 21153. When the County refused, Lazan filed a petition for writ of administrative mandate in the superior court. The court found that the County effectively separated Lazan when it found that her disability prevented her from being able to perform her job duties. The court issued a writ of mandate requiring that the County file the application.

On appeal, the County argues that it had no duty under Government Code section 21153 to file an application for disability retirement because it did not believe that Lazan was disabled. The County challenges the court's finding that it separated Lazan because it had offered her an alternative position with the same rank and pay. The County also challenges the court's ruling on attorney fees.

We conclude that the County had a duty to apply for disability retirement because, despite its claimed belief, the County treated Lazan as though she was incapable of performing her job duties because of her disability. We also reject the County's other arguments and affirm the judgment.

## 2. Factual and Procedural History

Lazan had worked as a deputy sheriff with the County since 1989. On June 4, 2001, Lazan, while responding to a call, collided into another patrol car. After the accident, Lazan complained of pain throughout her body, including her back and knees. Her doctor prescribed some medication and placed her off

work for a few days. Lazan had strained or injured her back on previous occasions, including two earlier off-duty car accidents. In regards to her recent back injuries, the initial x-rays of her lumbar spine indicated moderate to severe degeneration of her L4-5 and L5-S1 disks and tiny subligamentous protrusions at the L3-4 and L4-5 disks. According to the medical examiner, Lazan's condition was "permanent and stationary" and she was restricted from heavy lifting, repetitive bending, and prolonged standing and sitting.

Lazan filed an application for disability retirement in 2002. The County denied her application, finding that she was not disabled. Lazan initially appealed the County's ruling. In April of 2003, Lazan notified the County that she was withdrawing her appeal and requesting that the County reinstate her at the same position and salary.

After some additional correspondence, the County informed Lazan that she was to report to duty at the Jurupa Valley Station on May 12, 2003. Lazan contacted her assigned supervisors and informed them of her work restrictions. One of her supervisors replied that the station could not accommodate a light duty position. When Lazan reported for work, she gave her supervisors a memorandum detailing her diagnosis, work restrictions, and current medications. Captain Pete Lobahn handwrote on Lazan's memorandum, "No permanent, modified duty (light duty) positions exist at the Jurupa Valley Station. We are unable to accomodate [sic] Dep. Lazan's return to work in such a position." After an hour-long conversation, Captain Lobahn told Lazan to go home.

About two months later, on July 14, 2003, the County sent Lazan a letter stating that it had not refused to reinstate her to active duty. The County stated that, according to Lazan's initial medical examination, she was capable of performing her job duties as a deputy sheriff. The County stated that it had a position available for her. The County subsequently offered plaintiff a temporary clerical position in the human resources department.

Meanwhile, in a letter dated on August 20, 2003, the County notified Lazan of her "potential eligibility for vocational rehabilitation benefits." On March 1, 2004, the County sent Lazan another letter concerning her eligibility for vocational rehabilitation benefits. In the letter, the County stated that Lazan's eligibility was based on the determination that Lazan's medical condition prevented her from returning to her regular job duties. In the same letter, the County also informed Lazan that it did not have a job available within her work restrictions.

After receiving these letters, Lazan demanded that the County file an application for disability retirement on her behalf under Government Code

section 21153. The County responded by explaining that the notice was required under Labor Code former section 4637 and requested by Lazan's workers' compensation attorneys. According to the County, the notice did not represent a change in its position that Lazan was able to perform the duties of a deputy sheriff. Lazan unsuccessfully reasserted her demand under section 21153.

On June 1, 2004, Lazan filed a petition for peremptory writ of mandate and damages. After considering the evidence, the trial court found that the County effectively separated Lazan by failing to reinstate her employment. Specifically, the court found that the alternative clerical position failed to satisfy the requirement that the employer provide a job with the same classification, salary, benefits, and promotional opportunities. The court also found that, despite the County's assurances that it had a position available for Lazan, the notices sent to her regarding the workers' compensation case indicated that the County had determined that Lazan's disability prevented her from performing her job duties. The court granted Lazan's petition and issued the writ of mandate. The court entered judgment in accordance with its decision. The court permitted Lazan to apply for attorney fees.

### 3. Standard of Review

The trial court was required to apply independent judgment in reviewing the County's employment decision regarding Lazan's disability retirement. (See *Jones v. Los Angeles County Office of Education* (2005) 134 Cal.App.4th 983, 989 [36 Cal.Rptr.3d 617].) On appeal, we must examine the trial court's factual findings for substantial evidence. (*Ibid.*; *Abshear v. Teachers' Retirement Board* (1991) 231 Cal.App.3d 1629, 1635 [282 Cal.Rptr. 833].) In applying the substantial evidence test, we view the facts in the light most favorable to the judgment, resolving all conflicts in plaintiff's favor and accepting all reasonable inferences deduced from the evidence. (See *Abshear, supra*, at p. 1635.)

We apply independent judgment, however, to all questions of law. (*O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1620 [51 Cal.Rptr.2d 540].) The meaning of a particular statute is a pure question of law. (*Ibid.*)

### 4. Disability Retirement

The County contends that the superior court erred in finding that it had a ministerial or mandatory duty under Government Code section 21153[1] to file

---

[1] All further statutory references will be to the Government Code unless otherwise stated.

an application for disability retirement on Lazan's behalf. The County argues that, because it believed that Lazan was not disabled, it had no duty to file an application.

We reject the County's argument. While an employer is not required to file an application if the employee is not disabled, the evidence in the record supports the superior court's finding that, in effect, the County had determined that Lazan was disabled.

### A. *Section 21153*

Section 21153 provides: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20731."

Section 21153 is a provision in the "Retirement from Employment" chapter of the Public Employees' Retirement System (PERS) legislation (§ 20000 et seq.). The purpose of the legislation is to " 'serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents.' " (*Wheeler v. Board of Administration* (1979) 25 Cal.3d 600, 605 [159 Cal.Rptr. 336, 601 P.2d 568].) "Disability pension laws are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties. (§ 20001.)" (*Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1304 [79 Cal.Rptr.2d 749] (*Haywood*).) Generally, PERS legislation is to be construed liberally in favor of the employee to achieve the above objectives. (*Haywood, supra,* at p. 1304.)

■ As a preliminary matter, we note that, although the County argues at great length that it did not separate Lazan from her position as deputy sheriff, under section 21153, separation is not required before the County must apply for disability retirement. "Eligibility for disability retirement benefits does not turn upon whether the employer has dismissed the employee for disability or whether the employee has voluntarily ceased work because of disability." (*Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240, 1256 [277 Cal.Rptr. 531].) Also, it is not incumbent upon the employee to apply for retirement benefits. Under section 21153, the County must file the application on the employee's behalf. (See *Boyd v. City of Santa Ana* (1971) 6 Cal.3d 393, 398 [99 Cal.Rptr. 38, 491 P.2d 830].)

### B. *Section 21153 Imposes a Ministerial Duty*

■ As correctly noted by the County, a writ of mandate under Code of Civil Procedure section 1085 requires that the petitioner establish, among other things, that the County failed to perform an act despite having a clear and present ministerial duty to do so. (See *Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289 [131 Cal.Rptr.2d 454].) ■ It appears that the parties would agree that section 21153 imposes upon an employer a ministerial duty to apply for disability retirement despite being contingent upon a finding of disability, i.e., that the employee is "believed to be disabled."

■ It is well settled that, although a ministerial act by definition does not involve discretion, its performance may be contingent on the existence of certain facts. "A ministerial act . . . is one that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed, when a given state of fact exists." (*People ex rel. Fund American Companies v. California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623].) "Where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial. Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion. [Citation.]" (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 504–505 [2 Cal.Rptr.2d 50], citing *Great Western Sav. & Loan Assn. v. City of Los Angeles* (1973) 31 Cal.App.3d 403, 413 [107 Cal.Rptr. 359]; see also *Drummey v. State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 83 [87 P.2d 848].)

■ Section 21153 provides that, when the employee is believed to be disabled, the employer "shall apply for disability retirement." The word "shall" *indicates* a mandatory or ministerial duty. In other words, the employer has no authority to do otherwise. "[T]he Legislature has precluded an employer from terminating an employee because of medical disability if the employee would be otherwise eligible for disability retirement." (*Haywood, supra,* 67 Cal.App.4th at p. 1305; see also *Boyd v. City of Santa Ana, supra,* 6 Cal.3d at p. 398.) Section 21153, therefore, imposes a ministerial duty to apply for disability retirement if the contingency exists, namely, if the employee is "believed to be disabled."

### C. *Believed to Be Disabled*

The dispositive question in this case is whether the contingency existed so as to have triggered the County's ministerial duty. The County argues that it

had no duty to apply for disability retirement because it maintained that Lazan was capable of returning to work. Lazan argues that the County's statements made in the context of her workers' compensation case indicated that it believed that she was disabled. The trial court found that County's words and actions contradicted its claimed belief that Lazan was not disabled. Substantial evidence supports the court's finding.

■ Before discussing the evidence in the record, it is necessary to evaluate the criteria for determining when an employee is "believed to be disabled." The Government Code defines "disability" as a "disability of permanent or extended and uncertain duration, as determined by the board, or in the case of a local safety member by the governing body of the contracting agency employing the member, on the basis of competent medical opinion." (§ 20026.) The board, meaning the "Board of Administration of the Public Employee's Retirement System" (§ 20021), makes a determination to retire an employee based on disability if the employee "is incapacitated physically or mentally for the performance of his or her duties in the state service and is eligible to retire for disability." (§ 21156). Like the determination by the board, the governing body makes its determination based on competent medical opinion. "Belief" seems to be an unfortunate word choice. It may, however, reflect the distinction between a final determination by the board and the untested finding by the governing body. Nonetheless, both determinations are based on the evidence offered to substantiate the employee's disability.

In this case, the record shows that the County reviewed the medical reports and found that Lazan was incapable of performing her job duties. This finding is evident from the County's response to Lazan's request for reinstatement. When Lazan contacted her supervisors, they informed her over the phone that they could not accommodate her work restrictions. When Lazan appeared in person to report for duty on May 12, 2003, they again informed her that no position was available. On her memorandum that she had written explaining her diagnosis, work restrictions, and medications, Captain Lobahn wrote, "No permanent, modified duty (light duty) positions exist at the Jurupa Valley Station. We are unable to accomodate [sic] Dep. Lazan's return to work in such a position." After about an hour, Captain Lobahn told Lazan to go home. While the County maintains that Lazan was able to perform her duties, its actions indicated otherwise.

■ Furthermore, the evidence also supports the court's finding that the alternative position offered by the County was inadequate because it was temporary and did not provide the same promotional opportunities. An alternative position is adequate if the "employee retains his police officer classification, continues to receive the same salary and fringe benefits and has

the same promotional opportunities as other employees in the police officer classification." (*Stuessel v. City of Glendale* (1983) 141 Cal.App.3d 1047, 1051 [190 Cal.Rptr. 773].) In a letter dated on October 8, 2003, the County offered Lazan a temporary clerical position in the human resources department. The County argues that it offered a temporary position because it believed that Lazan was temporarily disabled as a result of her medications. Nothing in the record, however, suggests that Lazan's disability was temporary. Lazan was on certain medications, but her condition was permanent. Also, the temporary position would not have afforded Lazan the same promotional opportunities as other police officers. In fact, it was not even a clerical position in the police department, such as that of a front desk or operations officer. The modified-duty position was a "sheriff's deputy" position in name only. Although the County insisted that Lazan was capable of performing the duties of a deputy sheriff, it could not accommodate her at the Jurupa Valley Station and did not offer her a permanent modified-duty position as a deputy sheriff.

Moreover, in its August 20, 2003, letter, the County informed Lazan of her "potential eligibility for vocational rehabilitation benefits" because of her disability. In its March 1, 2004, letter, the County again informed Lazan of her potential eligibility and added the following statement: "We have determined that your medical condition will prevent return to your regular job duties." The County also told Lazan that the department "[d]oes not have a job available within your work restrictions."

The County contends that these statements were made in notices pertaining to Lazan's workers' compensation case. The County maintains that, in opposing Lazan's efforts to obtain retirement benefits, it has stated repeatedly that Lazan was capable of returning to her job duties. When Lazan previously had filed her own application for disability retirement, the County denied her application. After Lazan was sent home from the Jurupa Valley Station, the County insisted that it had not refused to reinstate her to active duty.

Based on these facts, the court properly found that, while the County's position may have been to deny retirement benefits and maintain that Lazan was capable of performing her job duties, it essentially treated Lazan as though she was disabled. Also, in regard to its conflicting statements, the County cannot reach opposite determinations based on the same medical evidence to advance its own interests. As one court noted, such conflicting statements concerning the same injury, based on the same medical evidence, places the employee in a "Catch 22." (*Roccaforte v. City of San Diego* (1979) 89 Cal.App.3d 877, 888 [152 Cal.Rptr. 558] (*Roccaforte*).) In effect, Lazan has been determined to be disabled and therefore has not been offered an opportunity to return to duty as a sheriff's deputy. But, based on the

County's position that she is able to return to her job duties, she has been denied any relief during her incapacity.

The County's justification for its conflicting positions is untenable. The County contends that the statements were made in notices that were required by statute. As noted by Lazan, however, while the notices may have been statutorily mandated, the findings therein were not. In addition to notifying Lazan of her potential eligibility for vocational rehabilitation benefits, the County also included the factual determinations that Lazan's disability prevented her from returning to her job duties and that the County did not have a suitable position for her. Any mandatory duty to provide notice did not require that the County make these particular factual findings.

Equally unhelpful is the County's reliance on *English v. Board of Administration* (1983) 148 Cal.App.3d 839 [196 Cal.Rptr. 277] (*English*). In *English*, the petitioner was a maintenance worker with the Los Angeles (the City) Department of Recreation and Parks. Based on his job-related back injuries, the petitioner filed an application for disability retirement. The City denied his application. The City also denied his request for reinstatement. After an unsuccessful attempt at vocational rehabilitation, the petitioner sought review by the superior court of the City's denial of his application for disability retirement. The superior court denied the petition for writ of mandate.

The appellate court affirmed the superior court's rejection of the petitioner's collateral estoppel argument that the City could not deny his application for retirement benefits based on its prior determination of his eligibility for vocational rehabilitation. (*English, supra,* 148 Cal.App.3d at p. 843.) The appellate court noted that, to be eligible for vocational rehabilitation under Labor Code section 139.5, the employee must suffer from injuries that preclude or were likely to preclude the employee from performing his or her usual job duties. (*English, supra,* at p. 843.) Because the criteria for vocational rehabilitation differed from the City's criteria for retirement benefits, the City did not apply the same standard and did not resolve the same issue. (*Id.* at pp. 843–844.) The City made no determination as to whether the petitioner's injuries in fact prevented him from performing his usual job duties. The appellate court, therefore, held that the doctrine of collateral estoppel did not apply. (*Ibid.*)

The appellate court, nevertheless, reversed the superior court's decision because it had failed to make a factual determination as to whether the City denied the petitioner's request to return to work. (*English, supra,* 148 Cal.App.3d at p. 845.) The evidence indicated that, while the City denied the petitioner's request for disability retirement, the City Department of Recreation

and Parks apparently found the petitioner was incapable of returning to work. The appellate court explained: "Here the [Los Angeles City Employees' Retirement System], which found the appellant able-bodied, and the Department, which allegedly found him too disabled to return to work, are parts of a single entity, the City of Los Angeles. Their decisions must therefore be consistent." (*Ibid.*, relying on *Roccaforte, supra*, 89 Cal.App.3d 877.) The appellate court also explained that, in addition to finding that the petitioner was incapable of returning to his position, there was no evidence that the City offered the petitioner an appropriate permanent light-duty position. (*English, supra*, at p. 847.) The appellate court remanded the case to the superior court to make these factual determinations and resolve the apparent conflict between the two administrative departments' findings. (*Id.* at pp. 847–848.)

In this case, the superior court made the required factual determinations and resolved the conflict between the administrative departments' findings, both against the County. As discussed above, the superior court found that the County in effect believed that Lazan was disabled (i.e., incapable of performing the duties of a deputy sheriff) and failed to offer Lazan an appropriate permanent position to accommodate her work restrictions. The superior court also resolved the conflict in the different positions taken by the County. The court found that the County should be bound by its statements in the vocational rehabilitation notices. Moreover, unlike in *English*, the County not only advised Lazan of her potential eligibility for vocational rehabilitation, but also made specific findings concerning her disability. It is true that the court in *English* established that one department's determination of eligibility for vocational rehabilitation does not have a preclusive effect on another department's determination of disability. Nonetheless, it is also true that the court in *English* held that the City, through its different administrative departments, should not be allowed to maintain conflicting positions concerning an employee's disability. (*English, supra*, 148 Cal.App.3d at pp. 845–846.)

We conclude that substantial evidence supported the court's finding that the County, by its words and actions, demonstrated that it believed that Lazan was incapable of performing her job duties as a deputy sheriff. The County, therefore, was required to apply for disability retirement on Lazan's behalf under section 21153.

### 5. Attorney Fees

The County argues that Lazan is not entitled to attorney fees under Code of Civil Procedure section 1021.5. In its judgment, the superior court awarded Lazan her costs and gave her permission to apply for attorney fees. As noted by Lazan in her brief, she has yet to file a request for attorney fees. The

issue, therefore, is not ripe for appeal. (See *Barnes v. Litton Systems, Inc.* (1994) 28 Cal.App.4th 681, 684 [33 Cal.Rptr.2d 562].)

## 6. Disposition

We affirm the trial court's judgment. Lazan shall recover her costs on appeal.

Hollenhorst, Acting P. J., and King, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 13, 2006, S145298.