[No. C062517. Third Dist. Jan. 31, 2012.]

MELANIE WELCH, Plaintiff and Appellant, v.
STATE TEACHERS' RETIREMENT SYSTEM, Defendant and Respondent.

COUNSEL

Melanie Welch, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Douglas M. Press, Assistant Attorney General, Julie Weng-Gutierrez and Brenda A. Ray, Deputy Attorneys General, for Defendant and Respondent.

OPINION

ROBIE, J.—In this case, we chronicle a schoolteacher's more than decade-long trip through a bureaucratic maze created by California's State Teachers' Retirement System (CalSTRS), which for years misinformed her and other applicants for disability retirement of the applicable eligibility requirements.

In October 1998, plaintiff Melanie Welch was attacked by a group of students while working as a teacher in Oakland. Following the attack, Welch never worked as a full-time teacher again. Welch, who had less than five

years of service credits at the time of the attack, claimed that because of misinformation she received from a telephone representative of defendant CalSTRS in January or February 1999 about the amount of service credits she needed to be eligible for CalSTRS benefits, she did not apply for disability retirement benefits at that time. In 2005, however, after learning she did not need five years of service credits if she was disabled because of the attack, Welch applied for disability retirement benefits from CalSTRS.

Finding no evidence Welch had been misinformed about her ability to apply for disability retirement benefits in 1999, CalSTRS rejected Welch's application because she failed to apply for benefits in a timely manner and did not provide medical records to substantiate that she had been disabled since her last day of work.[1] An administrative law judge (ALJ) upheld that decision, concluding Welch's "mistaken belief that she had insufficient service credit to qualify for a disability [retirement] was not due to misinformation provided by CalSTRS in 1999" and "there was no evidence that [Welch] was continuously incapacitated from her last day of actual performance."

In this administrative mandamus proceeding challenging CalSTRS's denial of Welch's application, the trial court concluded a CalSTRS telephone representative *did* mislead Welch about the eligibility requirements for disability retirement benefits in 1999. Nevertheless, the court determined that to qualify for relief from the late filing of her application, Welch still had to prove she was disabled back in 1999, when she would have filed her application but for the misinformation. The court concluded Welch had not made the required showing. In the court's view, while the weight of the evidence established Welch was disabled by September 2006 at the latest due to posttraumatic stress disorder resulting from the attack, there was no evidence the disability manifested itself and made her unable to work before 2005 at the earliest. According to the court, "although [Welch] evidently suffered from certain symptoms associated with post-traumatic stress disorder after the time of the attack, she was not actually disabled immediately after the attack, and did not become disabled as the result of her psychological condition of post-traumatic stress disorder until, at the earliest, August 26, 2005, and certainly as of September 18, 2006." Thus, the court concluded Welch was "suffer[ing] from a type of condition that either has a latency period between the first cause and the emergence of the effect, or that is not initially disabling, but becomes disabling later (perhaps in conjunction with

---

[1] As we will explain, this requirement comes from Education Code section 24102, which sets forth when an application for CalSTRS disability retirement benefits must be submitted for CalSTRS to authorize payment of a disability retirement allowance.

Further section references are to the Education Code unless otherwise noted.

other factors such as life stresses or illness)." Based on this reasoning, the trial court denied Welch's writ petition.

We conclude the trial court erred. Section 22308 gives CalSTRS the power—and sometimes the duty—to correct errors or omissions made by a member of CalSTRS or by CalSTRS itself. Here, the trial court determined that Welch might have been entitled to relief under section 22308 from the late filing of her retirement application, which occurred because of the misinformation Welch received from CalSTRS in 1999, if there was a sufficient basis for determining Welch was disabled as a result of the attack back in 1999, when she would have submitted her application but for the misinformation. As we have noted, the trial court concluded Welch was *not* disabled back in 1999. In reaching that conclusion, however, the court failed to recognize that the misinformation Welch received from CalSTRS *deprived her of a reasonable opportunity to develop contemporaneous evidence of her disability*—an omission the court found significant in determining Welch was not disabled until 2005 at the earliest.

As we will explain, although the evidence before the trial court was sufficient to support a finding that Welch was not disabled in 1999, if Welch had received correct information from CalSTRS in 1999 she might have been able to prove she was disabled at that time, even though she was not able to convince the court of that fact years later because she lacked contemporaneous evidence of her disability. Under these circumstances, CalSTRS had the power—and perhaps even the duty—under section 22308 to relieve Welch from the consequences of her lack of proof because that lack of proof was attributable to the misinformation CalSTRS provided her. Because CalSTRS never considered granting Welch relief under section 22308, due to the fact that CalSTRS erroneously determined it had not misled Welch, what the trial court should have done here was reverse the denial of Welch's application and remand the matter to CalSTRS for CalSTRS to decide, in the first instance, whether to exercise its power under section 22308 to relieve Welch from the consequences of her late-filed application, including her inability to prove with contemporaneous medical evidence that she was disabled in 1999. The trial court's action to the contrary was error. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Welch became a member of CalSTRS on September 1, 1997, and began teaching in the Oakland Unified School District in September 1998. On

October 29, 1998, she was physically attacked by a group of students while working as a teacher at a middle school in Oakland.[2]

The next day, the school principal asked her to return to work, but she "was still too shaken up," "too upset," so the principal directed her to report to an occupational medicine facility for an evaluation for workers' compensation purposes. A "Work Status Report" prepared as a result of that evaluation, which "focused on [Welch]'s physical condition and made no evaluation of her psychological condition," diagnosed Welch with multiple contusions but noted no permanent disability and released her for regular work effective that day. Welch did not go back to work, however, and on November 2, the school district placed her on administrative leave with pay.

The trial court's decision does not identify the basis for Welch's placement on administrative leave, but another appellate court opinion involving Welch's employment with the school district—*Welch v. Oakland Unified School Dist.* (2001) 91 Cal.App.4th 1421 [111 Cal.Rptr.2d 374]—does. That opinion states that Welch filed a complaint about school safety on October 30, 1998, and three days later "the District notified Welch that it had placed her on administrative leave with pay effective November 2, 1998." (*Id.* at p. 1425.) "The letter stated that [the district] was investigating allegations of her erratic behavior, including hitting and kicking children at [the middle school]."[3] (*Ibid.*)

Sometime between January 4, 1999, and early February, Welch called CalSTRS at the suggestion of someone who told her CalSTRS "might be able to help [her] with rehabilitation or something." During that telephone call, a CalSTRS representative misinformed Welch of the eligibility requirements for disability retirement by telling her there were no exceptions to the requirement that the member must have five years of credited service to apply for disability retirement benefits.[4] In fact, there *was* an exception that might have applied to Welch. Specifically, a CalSTRS member who has less than five

---

[2] According to the police report, Welch took a hat from two students who were arguing over it on a stairway landing. She was then shoved into the wall, which her head hit, then one of the students kicked her in the leg and punched her in the face, cutting the bridge of her nose with her eyeglasses. After that student ran, a mob of students rushed her and tried to push her down the stairs. At the administrative hearing, however, Welch claimed the police report did not "tell the whole story."

[3] At the administrative hearing, Welch testified that before she reported to the "occupational medicine place," she told the school principal that if he did not authorize her to transfer to another school or take steps to stop the violence at the school, she was going to "make a complaint it was an unsafe school." In response, he told her if she filed a complaint "he had 20 kids who would say that [she] had hit and kicked them."

[4] The general requirement, discussed further later in the opinion, is that "[a] member may apply for a disability retirement . . . if the member has five or more years of credited service . . . ." (§ 24101, subd. (a).)

years of credited service can receive a disability retirement allowance if "(1) [t]he member has at least one year of credited service performed in this state"; "(2) [t]he disability is a direct result of an unlawful act of bodily injury that was perpetrated on his or her person by another human being while the member was performing his or her official duties in a position subject to coverage under the Defined Benefit Program"; and "(3) [t]he member provides documentation of the unlawful act in the form of an official police report or official employer incident report."[5] (§ 24101, subd. (c).)

On February 2, 1999, the district informed Welch it had decided to release her from her employment contract and would pay her through February 26. Welch filed a petition for writ of mandate in Alameda County Superior Court in August 1999 to challenge her termination.

In November 2000, while her case was still pending, Welch saw Dr. Sally Slome at Kaiser Permanente for a checkup. Dr. Slome noted in the "Patient Progress Record" that Welch had had a severe fall down steps in her home on October 2. The record also noted, "tearful a lot" and "Stress/Depression— encouraged to try Behavioral Medicine."

In January 2001, the superior court entered judgment in Welch's favor in the proceeding challenging the termination of her employment and ordered the district to reinstate her as a probationary employee. The basis of the court's decision was that the district's termination of her employment "on fewer than 30 days' notice and without an opportunity to appeal violated the Education Code." (*Welch v. Oakland Unified School Dist., supra,* 91 Cal.App.4th at p. 1426.) The court ordered the district to provide Welch all dismissal procedure rights and also ordered backpay and benefits from the date of dismissal. (*Ibid.*)

In August 2001, the Court of Appeal affirmed the trial court's decision. (*Welch v. Oakland Unified School Dist., supra,* 91 Cal.App.4th at p. 1432.) By that time, however, the district had terminated Welch's probationary employment effective June 30, 2001, using proper procedures.

In either the 2001–2002 school year or the 2002–2003 school year, Welch worked for an unidentified number of days as a substitute teacher in Sacramento in an effort to "get [her] service credits up to five years," but "didn't handle it very well."

---

[5] In finding that this misrepresentation had been made to Welch, the trial court specifically found "no evidence that the misinformation in 1999 . . . was willful or done with intent to deceive."

In 2005, Welch learned for the first time of the "unlawful act of bodily injury" exception under section 24101, subdivision (c) to the five-year service credit requirement for disability retirement benefits. As a result, she called CalSTRS on August 22, 2005, and finally received acknowledgement of the exception directly from CalSTRS. Coincidentally, four days later Welch was examined by Dr. John Onate on a mental health referral from Sacramento County, where she was receiving general assistance benefits. Dr. Onate diagnosed her with "[m]ajor [d]epression recurrent severe PTSD [(posttraumatic stress disorder)]."

In September 2005, Welch filed her application with CalSTRS for disability retirement benefits on the ground she had been disabled by the attack in October 1998. Because she did not have five years of service credits, CalSTRS requested documentation that would establish Welch had been disabled since her last day of work and that her disability was a direct result of the October 1998 attack.[6]

In February 2006, CalSTRS rejected Welch's application for disability retirement benefits on the ground the medical documentation she provided did not substantiate that she had been disabled since her last day of work.[7] The rejection letter noted that Welch had "indicated in several discussions and via e-mail that [she] had inquired about whether or not [she] might have disability [retirement] benefits with CalSTRS as early as January 1999 and w[as] told [she] did not have coverage because of [her] service credit." After noting there was "no evidence that [Welch] w[as] misinformed about [her] ability to apply for disability in January 1999," the rejection letter informed Welch she could submit a written request for an "Executive Review" of her case, which should be accompanied by "all substantiating evidence of facts supporting your belief that an error or omission exists under Education Code section 22308." (Boldface & underscoring omitted.)

In April 2006, Welch requested an "Executive Review." In doing so, she admitted she did not have any evidence of the call she made in 1999 other than her own testimony. She did, however, offer tape recordings of telephone calls she made to CalSTRS representatives in October 2005, in which she

---

[6] According to the finding of the ALJ, which Welch has not challenged, Welch "has a total of 4.327 years of CalSTRS service credit." Later in the opinion we will explain why Welch's lack of five years of service credits made it significant whether she was disabled since her last day of work.

[7] CalSTRS treated February 28, 1999, as Welch's last day of work for purposes of its determination, presumably because that was the last day of work Welch identified on her application for disability retirement benefits. At the administrative hearing, however, Welch acknowledged that the last day she actually taught (with the exception of the later substitute teaching) was on the day of the attack in October 1998.

repeatedly received the same misinformation about the eligibility requirements for disability retirement benefits that she claimed to have received in 1999.

On "Executive Review," CalSTRS again rejected Welch's application. With regard to the misinformation she claimed to have received in 1999, CalSTRS concluded that Welch had "provided no objective documentation to substantiate that any misinformation was provided to [her] regarding the submission of [her] application for disability [retirement] benefits."

In response, Welch requested an administrative hearing. Meanwhile, in September 2006, Welch was examined by Dr. Rosemary Tyl to assist the Social Security Administration in determining whether Welch was disabled for purposes of receiving Supplemental Security Income (SSI) benefits. Dr. Tyl diagnosed Welch with "[m]ajor depressive disorder" and "[p]osttraumatic stress disorder." Dr. Tyl also concluded (among other things) that Welch did "not appear capable of sustained concentration, persistence, and pace needed for work due to depression and anxiety." As a result of Dr. Tyl's evaluation, Welch was found eligible for SSI benefits on the basis that she was unable to perform any substantial gainful activity.

The administrative hearing on CalSTRS's denial of Welch's application was held in September 2007. The ALJ issued a proposed decision in which he concluded "[b]ased on [Welch]'s lack of credibility and the lack of any corroborating evidence . . . that [Welch] was not misinformed by CalSTRS staff in 1999" about the "unlawful act of bodily injury" exception under section 24101, subdivision (c) to the five-year service credit requirement for disability retirement benefits. The ALJ also concluded that "there was no evidence that [Welch] was continuously incapacitated from her last day of actual performance."

CalSTRS adopted the ALJ's decision as its own in February 2008. After CalSTRS denied reconsideration, Welch filed this administrative mandamus proceeding in the superior court.

Exercising its independent judgment, the trial court found (contrary to the ALJ's finding) that Welch *was* misinformed by the CalSTRS representative in 1999 about the eligibility requirements for disability retirement benefits. Nevertheless, the trial court concluded that to qualify for disability retirement under section 24101, subdivision (c) based on the "unlawful act of bodily injury" exception, Welch still had to prove she had been disabled continuously since her last day of work, or at least that she was disabled in 1999 when she received the misinformation from the CalSTRS representative. Focusing on "the evidence regarding disability, with an emphasis, as required

by applicable law, on the medical documentation," the trial court determined that Welch "was disabled within the meaning of Education Code section 22126 as of September 18, 2006, based on Dr. Tyl's evaluation, and possibly as of August 26, 2005, based on Dr. Onate's evaluation" because "[a]t the later time, and possibly at the earlier as well, [Welch] . . . suffered from a medically determinable mental impairment, specifically, post-traumatic stress disorder, that was, at those times, permanent or expected to last continuously for at least 12 months, and that prevented her from performing her usual duties as a teacher for her employer." The trial court also determined, however, that "[t]he weight of the evidence does not establish . . . that [Welch] was actually disabled, in the sense of being unable to function as a teacher, immediately after the October 29, 1998 attack or at any time thereafter until, at the earliest, August 26, 2005, even though she may have manifested symptoms of post traumatic stress disorder during that period." In reaching this conclusion, the trial court considered (1) "[t]he initial worker's compensation examination"; (2) the lack of any medical records between October 29, 1998, and November 8, 2000; (3) "[t]he Kaiser Permanente record from November 8, 2000"; (4) Welch's service as a substitute teacher during the 2001–2002 or 2002–2003 school year; and (5) the medical records from 2005 and 2006. The court concluded that because Welch was not disabled in the years immediately following the attack, she must suffer "from a type of condition that either has a latency period between the first cause and the emergence of the effect, or that is not initially disabling, but becomes disabling later (perhaps in conjunction with other factors such as life stresses or illness)." But because the Education Code does not authorize disability retirement for "delayed-onset cases of disability . . . caused by conditions such as post-traumatic stress disorder," the court denied Welch's petition.

The court issued its minute order denying Welch's petition on July 17, 2009. Welch filed her notice of appeal that same day. The court entered judgment against Welch on July 30, 2009. Welch's appeal is timely because we treat it as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1).)

## DISCUSSION

### I

### *Applicable Statutes*

We begin with the Education Code provisions that govern our inquiry.[8]

---

[8] In this opinion, we use the current versions of the statutes. To the extent the statutes have been amended since 1999, when Welch would have submitted an application but for the

A

*Definition of Disability*

The definition of "disability" for purposes of CalSTRS's disability retirement program is set forth in section 22126, which provides as follows: " 'Disability' or 'disabled' means any medically determinable physical or mental impairment that is permanent or that can be expected to last continuously for at least 12 months, measured from the onset of the disability, but no earlier than the day following the last day of actual performance of service that prevents a member from performing the member's usual duties for the member's employer, the member's usual duties for the member's employer with reasonable modifications, or the duties of a comparable level position for which the member is qualified or can become qualified within a reasonable period of time by education, training, or experience. Any impairment from a willful self-inflicted injury shall not constitute a disability."

█ Essentially, under section 22126 a person is disabled if the person is unable to perform his or her regular duties or comparable duties without reasonable accommodation and that inability is permanent or expected to last at least a year from the date of onset.

B

*Eligibility Requirements*

The eligibility requirements for obtaining CalSTRS's disability retirement benefits are set forth in section 24101, which provides in relevant part as follows:

"(a) A member may apply for a disability retirement under this part, upon written application for disability retirement to the board on a properly executed form provided by the system,[9] if the member has five or more years of credited service and if all of the following requirements are met:

"(1) At least four years were credited for actual service performed subject to coverage under the Defined Benefit Program. Credit received because of

misinformation on eligibility from CalSTRS, and/or since 2005, when Welch did submit her application, we have determined that none of those amendments substantively affects this case.

[9] This phrase—"upon written application for disability retirement to the board on a properly executed form provided by the system"—was not part of section 24101 in 1999. (See Stats. 1998, ch. 965, § 161, pp. 7116–7117.) It was added to the statute in 2010. (Stats. 2009, ch. 304, § 19.)

workers' compensation payments shall be counted toward the four-year requirement in accordance with Section 22710.

"(2) The last five years of credited service were performed in this state.

"(3) Except as described in subdivision (d) of Section 24201.5, at least one year of credited service was earned subsequent to the date on which the member terminated the service retirement allowance under Section 24208.

"(4) At least one year of credited service was earned subsequent to the date on which the member's disability retirement was terminated.

"(5) At least one year of credited service was earned subsequent to the most recent refund of accumulated retirement contributions.

"(6) The member is not applying for a disability retirement because of a physical or mental condition known to exist at the time the most recent membership in the Defined Benefit Program commenced and that remains substantially unchanged at the time of application.

"(b) Nothing in subdivision (a) shall affect the right of a member to a disability retirement if the reason that the member has performed less than four years of actual service is due to an on-the-job injury or a disease while in employment subject to coverage by the Defined Benefit Program and the four-year requirement can be satisfied by credit obtained under Chapter 14 (commencing with Section 22800) or Chapter 14.5 (commencing with Section 22850) in addition to any credit received from workers' compensation payments.

"(c) Nothing in subdivision (a) shall affect the right of a member under this part who has less than five years of credited service to a disability retirement allowance if the following conditions are met:

"(1) The member has at least one year of credited service performed in this state.

"(2) The disability is a direct result of an unlawful act of bodily injury that was perpetrated on his or her person by another human being while the member was performing his or her official duties in a position subject to coverage under the Defined Benefit Program.

"(3) The member provides documentation of the unlawful act in the form of an official police report or official employer incident report."[10]

C

*Application Timing Requirements*

The requirements for when an application for disability retirement benefits must be submitted to CalSTRS are set forth in section 24102, which provides in relevant part as follows:

"(a) The board may authorize payment of a disability retirement allowance under this part to any member who is qualified upon application by the member, the member's guardian or conservator, or the member's employer, if the application is submitted on a properly executed form prescribed by the system during any one of the following periods:

"(1) While the member is employed or on a compensated leave of absence.

"(2) While the member is physically or mentally incapacitated for performance of service and the incapacity has been continuous from the last day of actual performance of service for which compensation is payable to the member. [¶] . . . [¶]

"(4) Within four months after the termination of the member's employment subject to coverage under the Defined Benefit Program, if the application was not made under paragraph (2) and was not made more than four months after the last day of actual performance of service for which compensation is payable to the member."

D

*Documentation Requirements*

The documentation requirements for establishing a disability that qualifies the applicant for disability retirement benefits are set forth in section 24103, which provides in relevant part as follows:

"(a) The member shall provide medical documentation substantiating the impairment qualifying the member for the disability retirement under this part.

---

[10] The requirement now contained in subdivision (c)(3) of section 24101 was not part of section 24101 in 1999. (See Stats. 1998, ch. 965, § 161, pp. 7116–7117.) It was added to the statute in 2006. (Stats. 2005, ch. 351, § 20, p. 3120.)

"(b) On receipt of an application for disability retirement under this part, the system may order a medical examination or review of medical documentation of a member to determine whether the member is incapacitated for performance of service. The medical examination or review of medical documentation shall be conducted by a practicing physician, selected by the board, with expertise in the member's impairment, and the board shall pay all costs associated with the examination or review of medical documentation. If the member refuses to submit to the required medical examination or review of medical documentation, the application for disability retirement shall be rejected. If a medical examination is ordered:

"(1) The member shall either remain in this state, or return to this state at the member's own expense, to undergo the medical examination or the application shall be rejected, unless this requirement is waived by the board. The board shall pay all other reasonable costs related to travel and meals in accordance with the rates set for state employees by the Department of Personnel Administration.

"(2) If the member is too ill to be examined, the system shall postpone the examination until the member can be examined. The member or the member's treating physician shall inform the system, in writing, when the medical examination can be rescheduled.

"(c) The system may reject the disability retirement application under this part if the member fails to provide requested medical documentation to substantiate a disability, as defined in Section 22126, within 45 days from the date of the request or within 30 days from the time that a legally designated representative is empowered to act on behalf of a member who is mentally or physically incapacitated."

E

*Correction of Errors and Omissions*

Finally, section 22308 allows CalSTRS to correct errors and omissions as follows:

"(a) Subject to subdivision (d), the board may, in its discretion and upon any terms it deems just, correct the errors or omissions of any member or beneficiary of the Defined Benefit Program, and of any participant or beneficiary of the Cash Balance Benefit Program, if all of the following facts exist:

"(1) The error or omission was the result of mistake, inadvertence, surprise, or excusable neglect, as each of those terms is used in Section 473 of the Code of Civil Procedure.

"(2) The correction will not provide the party seeking correction with a status, right, or obligation not otherwise available under this part.

"(b) Failure by a member, participant or beneficiary to make the inquiry that would be made by a reasonable person in like or similar circumstances does not constitute an 'error or omission' correctable under this section.

"(c) Subject to subdivision (d), the board may correct all actions taken as a result of errors or omissions of the employer or this system.

"(d) The duty and power of the board to correct errors and omissions, as provided in this section, shall terminate upon the expiration of obligations of the board, system, and plan to the party seeking correction of the error or omission, as those obligations are defined by Section 22008.

"(e) Corrections of errors or omissions pursuant to this section shall be such that the status, rights, and obligations of all parties described in subdivisions (a), (b), and (c) are adjusted to be the same that they would have been if the act that was taken or would have been taken, but for the error or omission, was taken at the proper time. However, notwithstanding any of the other provisions of this section, corrections made pursuant to this section shall adjust the status, rights, and obligations of all parties described in subdivisions (a), (b), and (c) as of the time that the correction actually takes place if the board finds any of the following:

"(1) That the correction cannot be performed in a retroactive manner.

"(2) That even if the correction can be performed in a retroactive manner, the status, rights, and obligations of all of the parties described in subdivisions (a), (b), and (c) cannot be adjusted to be the same as they would have been if the error or omission had not occurred."

With these provisions in mind, we turn to the standards of review that apply here.

## II

### *Standards of Review*

In an administrative mandamus proceeding, for the trial court "[t]he inquiry . . . extend[s] to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by

law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (*Id.*, subd. (c).)

"If an administrative decision is made by [CalSTRS] which affects a person's fundamental vested right to a disability allowance, the trial court is required to independently review the evidence presented to the Board when a petition for a writ of mandate is brought by the applicant for disability [retirement] benefits." (*Abshear v. Teachers' Retirement Board* (1991) 231 Cal.App.3d 1629, 1634 [282 Cal.Rptr. 833].) "Under the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings should be sustained." (*Vaill v. Edmonds* (1991) 4 Cal.App.4th 247, 258 [6 Cal.Rptr.2d 1].) "When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court: the only question is whether the *trial court's* (not the administrative agency's) findings are supported by substantial evidence." (*Ibid.*) Thus, "the role of an appellate court is to determine only whether there is credible, competent evidence to support the trial court's judgment. [Citations.] All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the judgment if possible; when two or more inferences can be reasonably deduced from the facts, this court is without power to substitute its deductions for those of the trial court." (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 578 [146 Cal.Rptr. 653].)

On review of a trial court's decision in an administrative mandamus proceeding "[w]e independently review questions of law, 'giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action . . . .' " (*Phelps v. State Water Resources Control Bd.* (2007) 157 Cal.App.4th 89, 99 [68 Cal.Rptr.3d 350].) Furthermore, "reversal is warranted when the administrative agency abuses its discretion, or exceeds the bounds of reason." (*Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, 721 [34 Cal.Rptr.3d 1].)

With these rules in mind, we turn to Welch's arguments on appeal.

III

*Eligibility Requirements Versus Application Requirements*

Welch contends the trial court erred because the court "interpreted . . . [s]ection 24101(c) to require proof of disability to work as a fulltime teacher . . . at the time the disability began on October 29, 1998, or at the time [she] called CalSTRS and was misinformed in early 1999," but "there is no mention of such requirement in . . . section 24101(c)." (Boldface omitted.) According to Welch, under section 24101, subdivision (c) she had a "right" to disability retirement benefits as long as she met the requirements of that subdivision.

Construing the relevant statutory provisions de novo, we conclude Welch's argument is incorrect. The reason the issue of whether Welch was disabled at the time of the attack in 1998 or at the time she received misinformation from CalSTRS in 1999 is significant has to do with the application timing requirements in section 24102, *not* the eligibility requirements in section 24101. Because a person seeking disability retirement benefits must satisfy both the qualification requirements of section 24101 *and* the application timing requirements of section 24102, Welch's argument that she was entitled to benefits based on satisfying the requirements of section 24102, subdivision (a)(3) alone is without merit.

Section 24102 provides that CalSTRS "may authorize payment of a disability retirement allowance under this part to any member who is qualified upon application by the member . . . if the application is submitted . . . during any one of [several] periods" described in the statute. Under the relevant terms of section 24102, for Welch's application to be timely Welch had to submit that application (1) while she was employed or on a compensated leave of absence (§ 24102, subd. (a)(1)); (2) while she was incapacitated for performance of service (i.e., disabled) with a disability that had been continuous from the last day of actual performance of service for which compensation was payable to her (§ 24102, subd. (a)(2)); or (3) within four months after the termination of her employment, if the application was not made based on a continuous disability and was not made more than four months after the last day of actual performance of service for which compensation was payable to her (§ 24102, subd. (a)(4)).

It appears undisputed that Welch was either employed or on a compensated leave of absence through June 30, 2001, when the school district finally terminated her probationary employment using proper procedures following her successful challenge to the original termination. It also appears undisputed that the last day of actual performance of service for which compensation was payable to Welch was October 29, 1998, the day of the attack,

because she never returned to teaching for the district after that date. Because Welch did not submit her application to CalSTRS until 2005, it is apparent that—absent relief under section 22308 (which we discuss later)—Welch's application would have been timely under the provisions of section 24102 only if she was continuously disabled from the day of the attack until at least the submission of her application in 2005.

While there is no dispute that under the trial court's decision Welch had satisfied the eligibility requirements of section 24101, subdivision (c) by no later than 2006, Welch is mistaken in arguing that her satisfaction of those eligibility requirements alone gave her a "right" to disability retirement benefits from CalSTRS without regard to her satisfaction of the *application timing* requirements in section 24102. That the application timing requirements of section 24102 apply notwithstanding the applicant's satisfaction of the eligibility requirements of section 24101, subdivision (c) is discernible from the prefatory language of the latter statute. Specifically, section 24101, subdivision (c) provides that if the requirements of that statute are satisfied, "[n]othing in *subdivision (a)* shall affect the right of [the] member . . . to a disability retirement allowance . . . ." (Italics added.) This means that if the eligibility requirements of section 24101, subdivision (c) are satisfied, disability retirement benefits cannot be denied based on the applicant's failure to satisfy the eligibility requirements in section 24101, subdivision (a). That does not mean, however, that a person who satisfies the eligibility requirements of section 24101, subdivision (c) has a "right" to disability retirement benefits without respect to whether he or she satisfies the *application timing* requirements of section 24102 also. By its terms, section 24102 permits CalSTRS to authorize payment of disability retirement benefits "to any member *who is qualified*" if the member submits an application that satisfies the timing requirements of section 24102. (Italics added.) Obviously, a member is "qualified" only if he or she satisfies the qualification requirements of section 24101. By the plain language of the statutes, then, the application timing requirements of section 24102 apply even if the person applying is otherwise eligible for benefits under section 24101, subdivision (c). Welch's argument to the contrary is without merit.

IV

*Eligibility Under Section 24101, Subdivision (b)*

Welch argues that without regard to section 24101, subdivision (c), she was eligible for disability retirement benefits under section 24101, subdivision (b). Again, on de novo review, we disagree. Unlike section 24101, subdivision (c), section 24101, subdivision (b) does not operate as a complete exception to the eligibility requirements in section 24101, subdivision (a),

which include the basic requirement of five years of credited service. Rather, by its plain language section 24101, subdivision (b) provides an exception to only *one* of the requirements of section 24101, subdivision (a)—specifically, the requirement in section 24101, subdivision (a)(1) that "[a]t least four [of the five] years [credited to the applicant] were credited for *actual service performed subject to coverage under the Defined Benefit Program.*" (Italics added.) Thus, section 24101, subdivision (b) deals exclusively with the situation where the applicant otherwise qualifies for disability retirement benefits under section 24101, subdivision (a)—including having five or more years of *credited* service—but "the member has performed less than four years of actual service . . . ." (§ 24101, subd. (b).) Essentially, section 24101, subdivision (b) allows a member, under certain circumstances, to satisfy the "four years [of] actual service" requirement in section 24101, subdivision (a)(1) with "permissive and additional service credit" for service "performed outside the United States or in federal schools within the United States" (§ 22800, subds. (a), (b)) or with service credit that is available to "reemployed members who have been absent from a position of employment subject to coverage under the Defined Benefit Program to perform service in the uniformed services of the United States in accordance with the Uniformed Services Employment and Reemployment Rights Act of 1994" (§ 22850, subd. (a)).

Here, because Welch did not have "five or more years of credited service," as required by section 24101, subdivision (a), she failed to meet the basic service credit requirement of that statute, and the question of whether she could have satisfied the "four years [of] actual service" requirement in section 24101, subdivision (a)(1) by means of the exception in section 24101, subdivision (b) is therefore moot.

V

*Evidentiary Issues*

In a cursory fashion, Welch contends the ALJ and the trial court both committed "errors of judicial discretion" in refusing to admit items of evidence. The only specific rulings she identifies, however, are (1) the trial court's quashing of a subpoena she issued to Dr. Slome and (2) the ALJ's denial of her "pre-hearing motion for an Independent Medical Examination."

Welch does not adequately develop her claim of error in the quashing of the subpoena or in the denial of her motion for a medical examination. She does not cite any legal authority on either point, and she provides no citation to the record regarding the motion for a medical examination. As for the

quashing of the subpoena, the only record citation she provides is to the subpoena itself. She provides no substantive analysis on either ruling.

An assertion of error that is not supported by authority or analysis requires no discussion. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 [29 Cal.Rptr.3d 127].) Accordingly, we need not and do not address this issue further.

## VI

### *Timeliness Under Section 24101, Subdivision (b)*

As the trial court recognized, because Welch did not submit an application for disability retirement benefits to CalSTRS until 2005, years after she stopped working as a full-time teacher (in Oct. 1998) and years after her employment was terminated (in June 2001), Welch did not satisfy the application timing requirement of section 24102, subdivision (a)(1) because she was not employed or on a compensated leave of absence when she submitted her application. She also did not satisfy the application timing requirement of section 24102, subdivision (a)(4), because she did not submit her application less than four months after her last day of work. Thus, the only application timing requirement Welch *could* have met was the requirement in section 24102, subdivision (a)(2), which required her to show that she had been disabled since the date of the attack.

As the trial court explained, "if the evidence demonstrate[d] that [Welch] was disabled as of her last date of work, and ha[d] been disabled continuously thereafter, then her application should have been approved under [section] 24102[(a)(2)], notwithstanding the fact that the application was submitted years after [she] ceased work." Moreover, if this scenario proved true, then Welch's application should have been approved irrespective of whether she received misinformation from CalSTRS in 1999 and might have qualified for relief under section 22308.

As we have explained, the trial court found that Welch "was not actually disabled immediately after the attack, and did not become disabled as the result of her psychological condition of post-traumatic stress disorder until, at the earliest, August 26, 2005, and certainly as of September 18, 2006." Sidestepping, for the moment, the availability of relief under section 22308, we must decide whether, on the evidence before it, the trial court erred in refusing to find that Welch was disabled in 1999 as a result of the attack the previous October. This is so because plaintiff argues that the evidence she submitted "substantiat[ed] . . . the continuous nature of her disability from the

time of the attack to the time of those documents." If Welch is correct, then she was entitled to relief, but Welch is not correct.

"Where, as here, the trial court has rendered its independent judgment following a review of the evidence presented at the administrative hearing, the role of an appellate court is to determine only whether there is credible, competent evidence to support the trial court's judgment." (*Shea v. Board of Medical Examiners, supra*, 81 Cal.App.3d at pp. 577–578.) Employing this deferential standard of review, we cannot say the evidence Welch submitted *compelled* a finding that she was disabled immediately following the attack and remained disabled continuously through the time she filed for disability benefits in 2005. While the evidence, including the medical documentation Welch submitted from 2005 and 2006, and the nature of her psychological condition (posttraumatic stress disorder), would have *supported* a finding that she had been disabled ever since the stressful event (the Oct. 1998 attack), we cannot say the court *had* to make that finding. In the context of administrative mandamus, the trial court "is free to substitute its own findings after first giving due respect to the agency's findings." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 818 [85 Cal.Rptr.2d 696, 977 P.2d 693].) The same cannot be said of us, however. "Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." (*Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655, 659 [14 Cal.Rptr.2d 225].)

That is not the case here. Because we cannot say that Welch proved as a matter of law that she was disabled since the attack, we cannot substitute our judgment for the trial court's and therefore cannot alter that court's finding that Welch did not satisfy the application timing requirement of section 24101, subdivision (b).

VII

*Relief Under Section 22308*

That leads us to the final issue—the applicability of section 22308. The trial court here recognized that even if Welch did not prove she was disabled at the time of the attack, she still might have been able to qualify for disability retirement benefits based on the correction provision in section 22308. As the court explained, "[i]f . . . the evidence demonstrate[d] that [Welch] was disabled at the time she first inquired regarding disability retirement in 1999, then [she] may be entitled to relief [under section 22308] based on [CalSTRS's] act of misinformation, notwithstanding the fact that her application eventually was submitted more than four months after her last

day of work." In the court's view, however, under this scenario it was still critical whether Welch was disabled as of the time she would have submitted her application, because if she "was not disabled in 1999, then she would not be entitled to relief because her application for disability retirement would not have been granted at that time, even if she had been given proper information about the eligibility requirements." Thus, the trial court concluded that the critical question, for purposes of applying section 22308, was whether Welch was disabled in 1999. As we have noted, the court concluded Welch was *not* disabled in 1999 and on that basis affirmed the denial of her application.

Welch challenges the trial court's conclusion, arguing that "[i]f [she] had . . . appl[ied] for CalSTRS benefits in 1999, she may have been able to obtain the necessary medical evaluation of her disability before losing her job and medical insurance coverage." In Welch's view, the trial court "erroneously equated delayed diagnosis with delayed onset, and it is significant that the delay in diagnosis was caused by . . . the misinformation from CalSTRS that all benefits, including disability/rehabilitation benefits, required at least five years of teaching service credit." She argues that "[t]he obvious remedy [for CalSTRS's error] is to 'deem' the application to have been timely in 1999 when [she] was misinformed . . . ."

We agree with Welch that the trial court erred in refusing to grant her any relief based on its finding that CalSTRS misinformed her in 1999 about the eligibility requirements for disability retirement benefits. At the same time, however, we do not agree with her suggested remedy for the trial court's error. As we will explain, the appropriate remedy is to remand the matter to CalSTRS for CalSTRS to act in the first instance to correct its own error under section 22308.

In finding error with the trial court's decision to deny Welch any relief based on CalSTRS's misinformation, we do not question the trial court's determination, *based on the evidence before it*, that Welch was not disabled in 1999. As we have explained already, based on what the record showed the court was not bound to find that Welch was disabled when she received the misinformation from CalSTRS. What is critical, however, is recognizing that *the evidence would have been different* if CalSTRS had not provided misinformation to Welch in 1999.

Had CalSTRS properly informed Welch in 1999 that she might qualify for disability retirement benefits under the exception in section 24101, subdivision (c) despite her lack of five years of service credits, the only reasonable conclusion from the evidence is that Welch would have applied for those benefits at that time, because, as she testified, "if [she] had known that

[she] could have gotten the benefits from CalSTRS, [she] would have applied then." Had she done so, her application would have been timely under section 24102, subdivision (a)(1), because she was on paid administrative leave through the end of June 2001, when the school district finally properly terminated her probationary employment following the court order reinstating her. Moreover, it is reasonable to conclude that, just as it did when it received her application in 2005, if CalSTRS had received an application from Welch in 1999 CalSTRS would have requested medical documentation from her supporting her disability claim. And as Welch contends in her brief, if CalSTRS had done so, "she would have been informed what documentation was needed at that time and could have obtained it despite loss of her employment-provided medical coverage that ended when she was illegally fired in February 1999."

In determining that Welch's argument "that she would have obtained better evidence of her psychological disability at an earlier date but for [CalSTRS's misinformation] [wa]s not persuasive," the trial court asserted as follows: "If [Welch] truly had been psychologically disabled at that time, it is to be expected that some indication of a complete inability to work would have shown up in the November, 2000 medical record (if only in the recording of [her] impression of her own condition), or in some other evidence covering the period between 1998 and 2005, but it does not. Moreover, if [Welch] truly had been psychologically disabled [at] that time, it is to be expected that she would not have been fighting for reinstatement, and that she would not have been able to work as a substitute teacher, even on a limited basis, during the 2002–2003 (or 2001–2002) school year."

We conclude it is *the trial court's* reasoning that is not persuasive, rather than Welch's argument. As we will explain, on the record here, there is no reasonable basis for concluding that CalSTRS's misinformation to Welch in 1999 did not affect Welch's ability to prove by contemporaneous evidence, including the crucial medical documentation, that she was disabled at that time as a result of the attack in October 1998. Because CalSTRS's misinformation necessarily affected Welch's ability to meet her burden of proof, it was an abuse of discretion for CalSTRS not to at least consider granting relief to Welch under section 22308, and it was an error for the trial court not to reverse the judgment and remand the case so CalSTRS could do so.

With respect to the "Patient Progress Record" from November 2000, although it was offered into evidence in the administrative proceeding by CalSTRS, CalSTRS offered no evidence regarding the context of that record. CalSTRS did offer the testimony of Suzanne De Fonte, its director for disability and survivor benefits, who was "responsible for processing all . . . applications when a member has less than five years of service credit," that

the record did not support a finding of disability because the examination it documented was "almost two years after the alleged incident at the school." On cross-examination, De Fonte testified that the record did not "document" that the "stress" and "depression" Welch reported (or the physician diagnosed) "was caused by or [wa]s a direct result of the unlawful act of bodily harm." And later, on redirect examination, De Fonte pointed out that there was a statement on the record that Welch was "unemployed, but it [did not] say she cannot work." But De Fonte could not offer any testimony about the circumstances in which the record was generated, other than what was shown on the record itself.

For her part, on the other hand, Welch testified that when she went to the doctor in 2000, she "did not have . . . medical insurance anymore," and she "only went because [her] landlord said he would pay for it because [she] had slipped and fallen on his steps." It thus appears that the November 2000 checkup related to a physical injury Welch had suffered in a fall a month earlier. Absent further evidence of the context of the checkup, however, we are at a loss to understand why, as the trial court concluded, "it is to be expected that some indication of a complete inability to work would have shown up in the . . . record [of that checkup] (if only in the recording of [her] impression of her own condition)." On the record before us, there is no *reasonable* basis for the trial court's conclusion in that regard. The record is entirely consistent with the examination being a physical checkup following an injury that had nothing to do with whether Welch was disabled from working and, if so, why. Accordingly, the trial court could not rely on what was *not* in this record to support its conclusion that Welch was not disabled and therefore could not have obtained better evidence of disability in the absence of CalSTRS's misinformation.

We likewise find unreasonable the trial court's reliance on the absence of "some indication of a complete inability to work" "in some other evidence covering the period between 1998 and 2005" as defeating the argument that Welch would have been able to obtain better evidence of her disability in 1999 but for the misinformation from CalSTRS. In essence, by this reasoning the trial court concluded that Welch should have had some other evidence of her inability to work during this period notwithstanding the misinformation she received from CalSTRS that prevented her from pursuing an application for disability retirement benefits. What form the court believed that evidence should have taken, the court did not disclose. But again, the court's reasoning fails to account for the reasonably likely effect of CalSTRS's action on someone in Welch's position. Believing she was not eligible for any disability benefits because she did not have five years of service credits, Welch could not reasonably be expected to develop evidence of her inability to work, especially evidence in the form of "medical documentation," which is the most critical to CalSTRS's determination of disability. (§ 24103, subd. (a).) It

is "bootstrapping of the first order" (*People v. Jones* (1988) 46 Cal.3d 585, 608 [250 Cal.Rptr. 635, 758 P.2d 1165] (conc. & dis. opn. of Mosk, J.)) to conclude, based on the absence of evidence of a psychological disability between 1999 and 2005, that Welch could not have obtained such evidence had CalSTRS not provided her with misinformation at the outset of that period. Accordingly, this aspect of the trial court's reasoning is unreasonable also.

As for the trial court's conclusion that Welch "fighting for reinstatement" was inconsistent with her being disabled in 1999, that reasoning is likewise unreasonable. So far as can be determined from the appellate opinion that resulted from the lawsuit challenging Welch's termination, the primary basis for the challenge was that the school district had failed to provide Welch sufficient *notice* of her termination. (See *Welch v. Oakland Unified School Dist., supra*, 91 Cal.App.4th at p. 1426.) Welch's inability to resume her previous employment as a full-time teacher because of a psychological disability resulting from the October 1998 attack would not necessarily be inconsistent with seeking to vindicate her right to proper *notice* of the termination of her employment as a probationary employee. In the end, she *did* vindicate that right, and thus earned two additional years of compensation, even though she never actually returned as a full-time teacher. Given these circumstances, and the lack of evidence that Welch fought her termination because she believed she could and/or wanted to return to full-time teaching, the trial court's reliance on her lawsuit as a basis for concluding she was not disabled in 1999 is wrong.

Finally, we reject the trial court's reliance on Welch's work as a substitute teacher sometime between 2001 and 2003 as a basis for concluding she was not disabled in 1999 and thus could not have obtained better evidence of her disability at that time absent the misinformation from CalSTRS. Neither party offered evidence of the extent of Welch's substitute teaching, nor of what exactly that teaching involved. Thus, on this record, there was no evidentiary basis for the trial court to equate full-time teaching with substitute teaching, and no basis for the court to conclude that because Welch engaged in the latter—with what she testified was little success—she must have been able to engage in the former.

■ As Welch points out, section 24113 specifically provides that "[a] member retired for disability under this part may be employed to perform creditable service subject to coverage under the Defined Benefit Program," and section 24114, subdivision (a) provides that "[a] member retired for disability under this part may be employed or self-employed in any capacity . . . ." The lesson of these statutes is that not all employment is

inconsistent with a retirement-qualifying disability, because, as we have noted, a person is disabled under section 22126 if the person is unable to perform his or her regular duties or comparable duties without reasonable accommodation. This definition does not foreclose employment involving *other* duties that are not comparable to those of the position from which the member is retired.

This is not to say that, with further evidence of what was involved in Welch's regular duties at the time of the attack and what was involved in her later substitute teaching, there would not have been a basis for finding the latter tended to defeat a claim of disability with respect to the former. We simply conclude that on the present record, the trial court could not *reasonably* determine that Welch was not disabled as a full-time teacher in 1999 because she engaged in some substitute teaching several years later.[11]

In summary, we conclude there was no reasonable basis for the trial court's determination that CalSTRS's misinformation to Welch in 1999 about the eligibility requirements for obtaining disability retirement benefits did not prevent Welch from obtaining contemporaneous evidence of disability in 1999. On the contrary, the record here supports the conclusion that if CalSTRS had not provided misinformation to Welch within months of the attack, it is reasonably likely she would have been able to obtain and present CalSTRS with medical documentation in support of an application for disability retirement benefits at that time. In any event, absent compelling evidence that Welch did not have a disability in 1999, CalSTRS should not *be allowed to take advantage of its own errors.*

In essence, while the record here is sufficient to support the conclusion that Welch did not *prove* she *was* disabled in 1999, CalSTRS cannot be heard to argue that the record *proves* Welch was *not* disabled at that time, because the missing proof could easily lie in the evidence that CalSTRS's misinformation prevented Welch from gathering. Section 22308 exists to provide relief in just this sort of situation. Welch's "error" or "omission" in failing to apply for disability retirement benefits when she first considered doing so in January or February 1999 was certainly "the result of mistake, inadvertence, surprise, or

---

[11] Even if Welch was not disabled when she engaged in substitute teaching sometime between 2001 and 2003, that does not mean she was not disabled in 1999, when she would have applied for disability retirement benefits but for the misinformation from CalSTRS. This makes a difference because in the exercise of its power to correct errors under section 22308, CalSTRS could determine that Welch would have been entitled to disability retirement benefits in 1999, even though her entitlement to those benefits would have lapsed sometime later. We express no opinion on this point; we merely offer it to illustrate the potential scope of the relief CalSTRS can grant under section 22308 depending on the circumstances.

excusable neglect, as each of those terms is used in Section 473 of the Code of Civil Procedure." (§ 22308, subd. (a)(1).) Indeed, even more so, Welch's inaction was a result of an "error" or "omission" by CalSTRS itself, which is also remediable under the statute. (See § 22308, subd. (c).) CalSTRS, however, never considered whether to exercise its discretion under section 22308 to correct its error because CalSTRS concluded there was no error. In light of the trial court's conclusion to the contrary, the failure of CalSTRS to exercise its discretion under the statute is itself an abuse of discretion. Moreover, because it appears reasonably likely that a result more favorable to Welch would have been reached if CalSTRS had acted under section 22308, the appropriate disposition here was to reverse the denial of Welch's application and remand the matter to CalSTRS to apply section 22308; the trial court erred in doing otherwise.

■ To the extent Welch argues, or implies, that the proper resolution is for this court "to 'deem' the application to have been timely in 1999 when [she] was misinformed," we disagree. Section 22308 commits to CalSTRS in the first instance the "discretion" to correct errors and omissions of itself or its members "upon any terms *it* deems just." (§ 22308, subd. (a), italics added.) As a reviewing court reviewing the decision of another reviewing court (i.e., the trial court in an administrative mandamus proceeding), it is not for us to determine what is "just" when CalSTRS has not yet had an opportunity to do so.

We also reject Welch's argument that in construing section 22308, we should look to a correction provision that applies to the California Public Employees' Retirement System (CalPERS), set forth in Government Code section 20160. As Welch points out, subdivision (b) of Government Code section 20160 provides that CalPERS "*shall* correct all actions taken as a result of errors or omissions of the university, any contracting agency, any state agency or department, or this system." (Italics added.) According to Welch, while section 22308, subdivision (c) uses the word "may" instead of "shall," we should construe the statute that applies to CalSTRS to have the same meaning as the one that applies to CalPERS, especially because section 22308, subdivision (d) refers to "[t]he *duty* and the power of [CalSTRS] to correct errors and omissions, as provided in this section." (Italics added.) Welch suggests that the reference to a "duty" to correct errors requires us to construe the word "may" in section 22308, subdivision (c) as meaning the same as the word "shall" in Government Code section 20160, subdivision (b).

We disagree, because the statutory history of both statutes supports the conclusion that the Legislature intended to give both words their usual meanings, with "may" being permissive and "shall" being mandatory. In

1988, the Legislature enacted the predecessor to section 22308 (former § 22233) at the same time it enacted the predecessor to Government Code section 20160 (Gov. Code, former § 20180). (Stats. 1988, ch. 1089, §§ 2, 5, pp. 3512–3514.) In the statute applying to the predecessor of CalSTRS, the Legislature used the word "may" (*id.*, § 2, pp. 3512, 3513); in the statute applying to CalPERS, the Legislature used the word "shall" (*id.*, § 5, pp. 3513, 3514). We have no reason to believe this was an oversight. Moreover, the use of the word "duty" in section 22308, subdivision (d) (which is also traceable to the predecessor statute) (see Stats. 1988, ch. 1089, § 2, pp. 3512, 3513) is easily reconcilable with the use of the word "may" in section 22308, subdivision (c). As we see it, the "power" of CalSTRS to correct errors or omissions in the exercise of its discretion that is expressed with the use of the word "may" becomes a "duty" under those circumstances where to take any other action would constitute an abuse of discretion. In this manner, section 22308 is internally consistent, and its meaning is not altered by the different language the Legislature chose to use in the correction provision applicable to CalPERS.

█    We therefore conclude that, under the facts presented here, as found by the trial court, CalSTRS had the power and the duty to correct the actions taken as a result of the misinformation CalSTRS provided Welch in 1999 regarding the eligibility requirements for disability retirement benefits. It was an abuse of discretion for CalSTRS not to consider whether to apply section 22308 to this case, and if so how. To the extent the trial court implicitly concluded otherwise, by concluding that Welch was not disabled in 1999 and therefore could not have presented better evidence of disability at that time even in the absence of the misinformation from CalSTRS, the trial court erred. The matter must be remanded to CalSTRS for CalSTRS to consider, in the first instance, the proper application of section 22308 here. In doing so, CalSTRS must fairly consider how its misinformation to Welch in 1999 affected her ability to provide CalSTRS with contemporaneous medical documentation of her psychological condition, and *CalSTRS must strive to the fullest extent possible to relieve Welch of the disadvantage she suffered because of that lost opportunity.* Section 22308 requires no less.[12]

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to enter a new judgment granting Welch's petition for a writ of administrative mandamus. The writ shall direct CalSTRS to vacate its

---

[12] In considering whether to grant Welch's application under section 22308, CalSTRS has the power to order a medical examination of Welch to determine by medical opinion whether Welch was disabled in 1999 as a result of the attack in 1998.

decision denying Welch's application for disability retirement benefits and to reconsider whether to grant that application under section 22308, consistent with this opinion.

Welch shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Blease, Acting P. J., and Hoch, J., concurred.