Filed 11/23/20  In re Bella A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re BELLA A., a Person Coming Under the Juvenile Court Law. | B305084 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEVIN A.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP00054E) |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Kevin A. (father) challenges the juvenile court's order denying his request for custody of his infant daughter, Bella A. (minor) under Welfare and Institutions Code section 361.2.[1]  Because there is substantial evidence that respondent Los Angeles County Department of Children and Family Services (Department) met its burden to show clear and convincing evidence that placement with father would cause minor detriment, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Holly B. (mother)[2] gave birth to minor after she had a brief, casual relationship with father.  Mother has four older children, minor's half-siblings, who were the subject of a related dependency proceeding involving sustained allegations of domestic violence and neglect against mother and her male companion, U.S., in January 2019.

———————————

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

[2] Mother is not a party to this appeal.

The Department started its current investigation on November 27, 2019, after mother left the hospital against medical advice and without completing the discharge process, shortly after delivering minor by cesarian section. Mother was reportedly fleeing because U.S. had just learned she had given birth to father's child. Father had completed the birth paperwork identifying himself as minor's father.

In early December 2019, the Department filed a dependency petition and obtained a warrant to detain minor. Mother was arrested a few days later, and the Department took custody of minor, who was placed in a foster home. At her arraignment, mother identified father and gave his address.

A Department social worker first interviewed father on January 3, 2020. Father requested a paternity test and an attorney, and stated his intention to exercise his parental rights. He explained that minor was his first child, and he planned for his roommate and his mother to help care for minor while he is working. His home had three bedrooms and three bathrooms. Father also identified his mother, minor's paternal grandmother, as a possible placement option, but wanted to discuss the matter with her before the social worker contacted her.

Father visited minor once with mother on December 12, 2019, but did not contact the social worker to arrange additional visits. The social worker mailed a visitation schedule to father on January 7, 2020. Father said he did

not plan to have a romantic relationship with mother, and he would be okay with mother only having visits with minor.

Father's criminal history included a number of arrests for minor crimes like theft and vandalism between 2009 and 2013. Father also had a 2016 misdemeanor conviction for driving under the influence. He was sentenced to 3 years probation and completed 25 hours of community service, an alcohol program, and a "Hospital and Morgue Program." Father did not finish high school; he has full time work as a mover, working for the same company since 2001, and he sometimes leaves town for work.

The social worker interviewed father's friend who has known him for 12 years and had no concerns. The friend confirmed that mother and father were not together, that father drinks on his day off but is not a big drinker, and he does not use drugs.

On January 9, 2020, the court found father to be minor's presumed father and appointed counsel for him. Father sought an order releasing minor to his custody, or alternatively for the court to order a pre-release investigation. The court ordered the Department to do a walk-through of father's home and to report on the frequency and quality of father's visits, explaining that it took father's request for custody seriously but needed more information, emphasizing minor's young age. The court further provided for father to have monitored visitation and gave the Department discretion to liberalize that visitation. The

court ordered the Department to provide father a written visitation schedule.

On January 17, 2020, the Department social worker visited father's home. It was clean and had all the necessary furniture, including a crib in father's room. The door to one of father's roommates' room was locked, preventing the social worker from inspecting that room. Father had not provided the social worker with his roommate's information, so the social worker had not been able to complete a criminal background check. The social worker also noted a strong odor of marijuana in the home, and father stated he smokes marijuana since it is legal in California. Father did not have a childcare plan in place, but he was assuming his mother would help babysit. Paternal grandmother had completed a live scan, but only to act as a monitor for father's visits. The social worker reported difficulty scheduling father's visits "due to his work schedule and his lack of flexibility." Father missed a two-hour monitored visit on January 19, 2020, because he arrived 50 minutes late, and the social worker had left after 45 minutes.

On January 23, 2020, the juvenile court sustained an amended petition, based on mother's no contest plea. The court granted an attorney order and continuance based on father's request for an opportunity to further develop information about his roommate and his proposed plan of care with paternal grandmother. Also based on father's request, the court ordered weekly drug testing, with the expectation that father test negative for all substances, but if

father tested positive for marijuana, that any marijuana levels decrease.

The Department's February 18, 2020 last minute report stated that father had yet to provide his roommate's identifying information, despite numerous requests. Father was also a "no show" for drug testing on three different dates: January 23, January 28, and February 4. Father had not tested because of his work schedule, and because he did not know in advance what part of the city he would be working in. The social worker provided father with the drug testing hotline number numerous times and offered to change father's testing location to one closer to his work site, but father did not communicate his location to the social worker.

The social worker did a walk-through of paternal grandmother's home and found it to be clean with no safety issues. Paternal grandmother was excited and looking forward to spending time with minor; she was also interested in caring for minor if the child was not placed with father. Paternal grandmother's resource family approval (RFA) application was submitted on February 5, 2020. (See § 16519.5.)

At the disposition hearing on February 19, 2020, the court denied the Department's request for a continuance, admitted the Department's reports into evidence, and heard argument on reunification services and placement. The Department recommended reunification services for father, and for minor to remain suitably placed. Minor's counsel

joined the Department's request for suitable placement, asking that the Department continue to assist paternal grandmother in the RFA process. Minor's counsel asked the court to order drug testing for father, and to give the Department discretion to liberalize visits to unmonitored after father had drug tested. Father asked for minor to be released to his care and custody, arguing the Department did not have clear and convincing evidence that doing so would pose a substantial risk of harm. Father was non-offending, and although the Department had reported a marijuana odor in father's home, he denied marijuana use. Father's attorney had previously requested drug testing to alleviate any concerns about drug use, but now acknowledged that because of uncertainty about where father would be working on any specific day, he had been unable to test. Nevertheless, other than the marijuana odor, there was no evidence to support any suspicion that father used drugs. Father had the items necessary to care for minor, including a crib and diapers, and so there was not clear and convincing evidence to deny father custody of his child. Alternatively, father asked the court to place minor with paternal grandmother, as father's plan of care. If the court was not inclined to do that, father asked for drug testing, objected to individual counseling, and submitted on the parenting class recommendation. Mother's counsel joined in father's request and argument. The Department repeated its request for a suitable placement order, noting that there was evidence of a strong marijuana smell in

father's home, and father had not participated in drug testing, missing three tests. The Department also pointed to father's 2016 DUI conviction, and the Department's inability to fully assess father's home because the roommate's bedroom was locked and the roommate had not cooperated with being assessed.

The court found that there was clear and convincing evidence of substantial risk of detriment. Stating its reasoning for denying father's request for custody under section 361.2, the court noted that minor was three months old, and recounted some relevant facts. The social worker had noted a strong marijuana odor during her visit to father's home, and father acknowledged smoking marijuana because it was legal. After the court continued disposition and ordered drug testing to determine the level of father's marijuana use, father had missed three tests. The court emphasized, "This is a child of very tender years. I think [father] had every opportunity by this court to demonstrate that he could safely care for this child, and I don't think he has." The court added that the Department had not been able to obtain any information about father's roommate, despite multiple efforts, leaving open the possibility that the roommate's locked bedroom contained "all sorts of hazards." Addressing father's request to implement a "plan of care" where father would have custody of minor, who would live with minor's paternal grandmother, the court stated it would not be safe to give father unfettered access to minor for the reasons already stated. Finally, the court declined to make a

relative placement with paternal grandmother, because she had a "hit," meaning a prior conviction, from 2004, and was currently going through the RFA process to get a waiver.

Father filed a notice of appeal on February 25, 2020.

## DISCUSSION

*Relevant law and standard of review*

When the juvenile court removes a child from the custody of one parent, section 361.2 requires the court to place the child with the other, noncustodial parent if (1) that parent so requests, and (2) "placement with th[e noncustodial] parent" would not be "detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) If the Department opposes the non-custodial parent's request for placement, it bears the burden of proving detriment by clear and convincing evidence. (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401–1402; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).) We review the entire record in the light most favorable to the court's order to see whether substantial evidence supports the finding. (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.) Our role is limited because our review of the juvenile court's detriment finding is deferential. (See *In re K.B.* (2015) 239 Cal.App.4th 972, 979.) However, our Supreme Court recently clarified that when the burden of proof at the trial court level is clear and convincing, the

9

substantial evidence standard of review should account for the higher level of certainty demanded by that burden of proof, as compared to facts proven by preponderance of the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998–1006.)

In assessing whether placing a child with her noncustodial parent would be "detrimental to [her] safety, protection, or physical or emotional well-being," the juvenile court must "examin[e] . . . the circumstances of the parent and child" (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1503, 1506), although "the focus in dependency law [is] on the child, not the parent." (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1425; see generally § 300.2 ["The focus [of dependency law] shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child"].) The court is to "weigh all relevant factors to determine if the child will suffer net harm." (*Luke M.*, at p. 1425.) Because "[a] detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm," no one factor can be dispositive. (*Ibid.*; see also *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1265.)

Among the factors the juvenile court may consider are the non-custodial parent's past, current, and future circumstances, including any jurisdictional findings against that parent, any criminal history, and any history of substance abuse or mental illness. (*In re Patrick S.*, *supra*, 218 Cal.App.4th at p. 1263; *In re Nickolas T.*, *supra*, 217 Cal.App.4th at p. 1505; *In re A.A.* (2012) 203 Cal.App.4th

597, 607; *In re V.F.* (2007) 157 Cal.App.4th 962, 970.) The juvenile court may also consider several other factors including: the age of the child and any special needs that child may have; the impact of placement on the custodial parent's ability to reunify and on any sibling relationships; the nature of the relationship between the parent and the child; the parent's ability to meet the child's needs; and the child's wishes. (*In re Patrick S., supra,* 218 Cal.App.4th at p. 1265; *In re John M.* (2006) 141 Cal.App.4th 1564, 1570–1571; *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700; *Luke M., supra,* 107 Cal.App.4th at pp. 1425–1427.)

*Analysis*

Substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that placement with father would be detrimental to minor.

Father challenges the juvenile court's determination that minor's placement with father would be detrimental, arguing that the court improperly ignored evidence that father was willing and able to care for minor. However, the facts father highlights are not relevant to the question on review. The juvenile court found the Department had met its burden of showing by clear and convincing evidence that placement with father would be detrimental to minor. On review, we simply consider whether the record contains "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded

11

by this standard of proof." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005.)

Here, the record contains evidence to support the juvenile court's detriment finding. Despite a 2016 misdemeanor conviction for driving under the influence, father still drank occasionally and admitted he used marijuana because it was legal. As recognized in prior cases, an infant's physical health is placed in danger when he or she is exposed to secondhand marijuana smoke. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452.) Even though the social worker offered to identify drug testing locations closer to father's work, father missed three drug tests between mid-January and early February 2020. Each missed test is "properly considered the equivalent of a positive test result." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217.)

During the three months minor was suitably placed, father only visited once, on December 12, 2019. While his inability to visit may be attributable to his busy work schedule, the logical consequence of his failure to make time to visit was that he had not established any meaningful bond with his infant daughter. Taken together with father's missed drug tests, and his poor record of ensuring ongoing communication with the social worker, it would also be reasonable for the juvenile court to infer from this record that father would have trouble scheduling and taking minor to regular doctor's visits for milestone checkups and necessary immunizations. Finally, father was either unwilling or unable to provide his roommate's identifying

12

information to the social worker, even though he acknowledged that he would rely on his roommate to provide childcare.

Father also argues that the court should have ordered paternal custody, with minor being placed with paternal grandmother. Father's argument is inapposite. To the extent father might have been requesting that paternal grandmother be considered for relative placement under section 361.3, that question was not considered by the juvenile court, nor is it before us on appeal.

## DISPOSITION

The juvenile court's finding of detriment and its order denying father's request for placement under section 361.2 are affirmed.

MOOR, J.

We concur:

RUBIN, P. J.                KIM, J.